**Alan Daniel WILWORDING, Appellant,**

v.

**Harold R. SWENSON, Warden, Missouri Penitentiary, Appellee.**

**No. 74–1071.**

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1974.

Decided Sept. 10, 1974.

Rehearing and Rehearing En Banc Denied Oct. 1, 1974.

---

**846**

Ronald M. Sokol, Public Defender, St. Joseph, Mo., of counsel; Ronald M. Sokol, Kansas City, Mo., and Robert Plotkin, NLADA, Washington, D. C., on brief, for appellant.

David Robards, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before LAY, ROSS and STEPHENSON, Circuit Judges.

LAY, Circuit Judge.

Petitioner Wilwording has spent five unsuccessful years seeking an evidentiary hearing on his claim of unconstitutional disciplinary measures in the Missouri State Penitentiary. In 1969, he filed a § 1983 civil rights action in the United States District Court for the Western District of Missouri and a petition for a writ of habeas corpus in the Circuit Court of Cole County, Missouri. The habeas petition was denied. The Supreme Court of Missouri affirmed the denial of the writ in December, 1969.

Petitioner then filed the federal habeas petition involved in this appeal. The United States District Court dismissed the habeas petition on the ground that Wilwording had failed to exhaust a number of extraordinary writs theoretically available in Missouri in addition to the state habeas claim. This court affirmed on that ground, Wilwording v. Swenson, 439 F.2d 1331 (8th Cir. 1971). The Supreme Court of the United States summarily reversed, holding that Wilwording had adequately fulfilled the exhaustion requirement.

> The exhaustion-of-state-remedies rule should not be stretched to the absurdity of requiring the exhaustion of . . . separate remedies when at the outset a petitioner cannot intelligently select the proper way, and in conclusion he may find only that none of the [alternatives] is appropriate or effective.

Wilwording v. Swenson, 404 U.S. 249, 250, 92 S.Ct. 407, 409, 30 L.Ed.2d 418 (1971).

The Court alternatively held that the petition might be viewed as arising under § 1983, in which event there was no exhaustion requirement. *Id.* at 251, 92 S. Ct. 407.[1] The Court remanded with directions, *inter alia*, to determine the effect on the habeas claim of Wilwording's separate civil rights suit, which had meanwhile been consolidated with those of several other Missouri prisoners. In those consolidated cases, at a pretrial conference of which no transcript has been prepared,[2] the decision was made to drop most claims other than the Eighth Amendment claims which were the common question. Judge Elmo Hunter of the Western District of Missouri dismissed with prejudice the non-Eighth Amendment questions and tried the remaining claims on

---

1. The Supreme Court later characterized Wilwording's petition as generally attacking "conditions of confinement." *See* Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

2. Present counsel did not represent petitioner for purposes of the civil rights suit. Counsel's motion for a transcript of the original trials was denied. Record at 36, 43; Slip Opinion at 19.

the merits.[3] On June 28, 1971, Judge Hunter, in an exhaustive opinion, denied relief to Wilwording and all other petitioners. The prisoners were denied a certificate of good faith to appeal by both the district court and this court. The Supreme Court denied certiorari, *Beishir v. Swenson*, 407 U.S. 922, 92 S. Ct. 2467, 32 L.Ed.2d 807 (1972).

Thereafter, Wilwording continued to prosecute his habeas claim. On January 18, 1972, after remand from the Supreme Court, this court sent the habeas case back to the district court. Counsel was appointed on May 11, 1972, and all pleadings were completed shortly thereafter. Pretrial briefs were ordered in January, 1973, and were filed by June of, that year. On December 3, 1973, the district court, without evidentiary hearing, filed a detailed 52-page opinion denying petitioner relief on three alternative grounds: (1) that Wilwording's habeas petition should be viewed as a § 1983 action, so that *res judicata* would bar relitigation of issues tried in the civil rights suit; (2) that even if the habeas petition was viewed outside of a § 1983 claim, the dismissal in the civil rights suit should be given "controlling weight;" and (3) that any claims not adjudicated in the civil rights suit had not been stated in the original habeas petition and hence could not now be introduced without returning to the state courts to exhaust remedies there.

### A. Nature of the Claim—Habeas or § 1983?

Although the Supreme Court did state alternatively that Wilwording might be "entitled" to have his claims viewed as § 1983 questions, we find that ruling should not be invoked against him to deny relief here. On this second appeal, Wilwording has abandoned his cruel and unusual punishment claims. He urges that his petition must be treated as one seeking only habeas corpus relief (the petition has at all times been so entitled) since the surviving claims relate to denial of due process in disciplinary proceedings resulting in a false prison record and loss of good time.[4]

In his *pro se* complaint Wilwording generally alleged a denial of substantive and procedural due process in the prison disciplinary action. He alleged:

> [t]hat the petitioner's institutional record has been greatly tainted by the respondents [sic] false and unjust reports with absolutely no valid evidence to support such charges. That the petitioner must be granted proper judicial review by this Honorable Court regarding these false charges, to clear

---

3. One non-Eighth Amendment claim of petitioner, that of denial of access to the courts, was apparently tried on the merits in the civil rights action.

4. Petitioner on remand attempted to amend the petition so as to clarify the grounds relied upon. The district court refused to allow the amendment, apparently on the ground that the petition should be reviewed in the same form as that presented to the Supreme Court. We disagree. Whenever counsel can assist the court in clarifying a *pro se* petition, the trial court should welcome the assistance. Obviously, if counsel added new factual grounds, requiring exhaustion, these must be rejected. On the other hand, *pro se* petitions should be liberally construed and if the amended grounds factually relate to the original *pro se* complaints, dismissal and a new round of litiga-

tion in the state courts should not be required. In the instant case an amended petition could well have obviated the claims now abandoned; additionally it might well have clarified petitioner's right to an evidentiary hearing on the claims still before us. It has been observed:

> The habeas statute permits amendment of a petition according to the rules applicable in civil actions. The Civil Rules provide for amendment at any time by leave of court, and leave is to be "freely given when justice so requires." Recognizing the efficiency and fairness of resolving all of a petitioner's habeas claims in one hearing, the courts have permitted liberal use of the amendment privilege.

Note, Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1178–79 (1970).

his record of any wrong doing for further parole consideration.

Although inarticulately expressed, this sufficiently alleges that petitioner's prison record contains false charges and affects his parole consideration. He claims "illegal detention," in that his imprisonment may be lengthened by arbitrary government action taken without evidence. These allegations also raise the problem of loss of good time. Such issues are clearly cognizable in habeas corpus under Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).[5]

■ Treating Wilwording's petition as a petition for a writ of habeas corpus subjects it to the requirement in 28 U.S.C. § 2254 of exhaustion of state remedies. However, the claims surviving were, as discussed above, adequately raised in the initial petition considered by the Supreme Court. The Supreme Court determined that Wilwording's state habeas claim had fulfilled the exhaustion requirement by giving the state "an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Wilwording v. Swenson, supra, 404 U.S. at 250, 92 S. Ct. at 409. Thus the law of this case is that the exhaustion requirement is satisfied.

B. *Finality in Criminal Proceedings: Res Judicata, Collateral Estoppel, and Controlling Weight*

■ Viewing the petition as seeking a writ of habeas corpus, traditional notions of *res judicata* become inapplica-

ble. As the Supreme Court recognized in Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963):

Conventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged. . . . The inapplicability of *res judicata* to habeas, then, is inherent in the very role and function of the writ.

*Id.* at 8, 83 S.Ct. at 1073.

*Accord,* Preiser v. Rodriguez, *supra,* 411 U.S. at 497, 93 S.Ct. 1827; Fay v. Noia, 372 U.S. 391, 423, 83 S.Ct. 822, 9 L.Ed. 2d 837 (1963); Townsend v. Sain, 372 U.S. 293, 312–318, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963); Vestal, Res Judicata/Preclusion 270 (1969).

■■ Nor does it appear that the petitioner's voluntary dismissal of these claims from the civil rights suit would bar a hearing on them now under the usual principles of collateral estoppel. It has long been recognized that dismissal at plaintiff's request, even if it is with prejudice, is insufficient to invoke the bar of collateral estoppel. That doctrine precludes a new hearing only on "issues actually litigated and determined in the prior suit." Lawlor v. National Screen Service Corp., 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955).

As the district court recognized, however, the principle that the judicial interest in finality is greatly attenuated in challenges to custody of the person does not mean it is absent altogether. The district court thus held that if neither *res judicata* nor collateral estoppel barred Wilwording's claim, nevertheless

---

5. The Supreme Court noted in *Preiser* that [T]he respondents' suits in the District Court fell squarely within this traditional scope of habeas corpus. They alleged that the deprivation of their good conduct time credits was causing or would cause them to be in illegal physical confinement, *i. e.,* that once their conditional release date had passed, any further detention of them in prison was unlawful; and they sought restoration of those good-time credits, which, by the time the District Court ruled on their petitions, meant their immediate release from physical custody.

Even if the restoration of the respondents' credits would not have resulted in their immediate release, but only in shortening the length of their actual confinement in prison, habeas corpus would have been their appropriate remedy. For recent cases have established that habeas corpus relief is not limited to immediate release from illegal custody, but that the writ is available as well to attack future confinement and obtain future releases.

411 U.S. at 487, 93 S.Ct. at 1835.

the prior dismissal with prejudice should be accorded "controlling weight." In Sanders v. United States, *supra,* the Supreme Court set out criteria for determining when controlling weight may be given to denial of a prior application for federal collateral relief. The Court held that prior determination would bar a rehearing only if all three of the following conditions were met:

> (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.

*Id.* 373 U.S. at 15, 83 S.Ct. at 1077.

Dismissal with prejudice might be an adverse determination within the meaning of the first *Sanders* criterion, but it will not satisfy the second. The requirement of a decision "on the merits" in this context means that *an evidentiary hearing was held* on the contested issues of fact, unless it could be said that the files and records conclusively resolved the issue. *Id.* at 16, 83 S.Ct. 1068; Raiford v. United States, 483 F.2d 445, 446 (9th Cir. 1973); Cancino v. Craven, 467 F.2d 1243, 1246 (9th Cir. 1972); Oliver v. United States, 398 F.2d 353, 355 n. 5 (9th Cir. 1968). In the instant case, the surviving claims were dismissed before trial, so there was no evidentiary hearing, and those claims rest on contested issues of fact which were not resolved. Thus, the second *Sanders* criterion is unsatisfied, so it was error to attribute controlling weight to the dismissal in the civil rights suit. We conclude that the *Sanders* criteria have not been satisfied and that the judgment in Wilwording's prior civil rights suit cannot properly be accorded "controlling weight" in the present habeas proceeding.

> C. *Voluntary Dismissal as Waiver Barring Subsequent Relief*

*Res judicata,* collateral estoppel and "controlling weight" do not

exhaust the grounds for denial of a second application for federal relief, although those are the only grounds advanced by the respondents and discussed by the court below in this case. The principles of equity have traditionally governed habeas corpus, and among those is the idea that the petitioner's bad faith or otherwise inequitable conduct may merit denial of relief. Where a prisoner deliberately bypasses an adequate state remedy, or purposefully withholds or withdraws a known claim from a prior application for federal relief, that may be deemed a waiver of any right to a subsequent hearing on the claim. Sanders v. United States, *supra,* 373 U.S. at 18, 83 S.Ct. 1068; Fay v. Noia, *supra,* 372 U.S. at 433, 438–439, 83 S.Ct. 822; Townsend v. Sain, *supra,* 372 U.S. at 317, 83 S.Ct. 745. *Cf.* Price v. Johnston, 334 U.S. 266, 289–292, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948); Wong Doo v. United States, 265 U.S. 239, 241, 44 S.Ct. 524, 68 L.Ed. 999 (1924).

Such abuse of the writ, however, is "rare and extraordinary." Simpson v. Wainwright, 488 F.2d 494, 495 (5th Cir. 1973). The burden of pleading and proving waiver of these constitutional claims falls on the government. Sanders v. United States, *supra,* 373 U.S. at 17, 83 S.Ct. 1068; Price v. Johnston, *supra,* 334 U.S. at 291–292, 68 S.Ct. 1049; United States v. Lee, 446 F.2d 350, 352 (9th Cir. 1971). Because a finding of waiver bars even a meritorious claim for habeas corpus relief, the government's burden is a heavy one. The Supreme Court made it clear in Fay v. Noia that legal fictions were not to be introduced to deny habeas corpus relief, and that waiver in this context means "an intentional relinquishment or abandonment of a known right or privilege." 372 U.S. at 439, 83 S.Ct. at 849. While *Fay* dealt with "deliberate bypasses" of state remedies, *Sanders* adopted that definition of waiver for use where prior opportunities for federal relief have allegedly been sidestepped. 373 U.S. at 18–19, 83 S.Ct. 1068.

It might be argued (although it has not been in the briefs on appeal or the opinion below) that Wilwording's dismissal from the civil rights suit of the claims here pursued was such an "intentional abandonment of a known right." Since this claim was not raised below, the facts surrounding those dismissals are not adequately developed. However, a study of the record indicates that Wilwording is not abusing the writ so as to foreclose relief on those claims. First, at the time the dismissals were entered, Wilwording's habeas petition raising the same claims was pending in the same district court against the same respondents. Absent the transcript of the conference at which dismissal was orally agreed upon, it cannot be demonstrated that Wilwording or his attorney actually understood that voluntary dismissal from one suit would bar the claim from the habeas proceeding as well. Nor can it be said that they should have so interpreted the situation, for the principle that *res judicata* does not apply to habeas was already well established. Furthermore, the reason advanced for the dismissals, *i. e.*, simplifying trial of the common questions in a consolidated case by eliminating other issues, lends support to petitioner's claim that he never intended to dismiss "with prejudice."

In sum, the government has not shown and the record does not indicate that Wilwording's conduct has been inequitable or in bad faith so as to justify denial of relief. Dismissal of a claim from one suit when the same claim is still pending in another suit does not lull the state into false security until it is too late to present an adequate defense. To bar relief now merely because Wilwording did not appeal from the dismissal with prejudice nor attempt within one year to set it aside would be the kind of technical forfeiture of constitutional claims which the Supreme Court rejected in *Fay*.

### D. *Availability of the Relief Requested*

There remains one final obstacle to a hearing on the merits of Wilwording's claims. The Supreme Court recently defined the minimum requirements of procedural due process in prison discipline, but it declined to give them retroactive effect. The Court held it too great a burden on the administration of justice to require expungement of prison records and restoration of good time whenever prior disciplinary actions had not met the newly announced procedural standards. Further, the Court noted that prison officials had relied in good faith on *prior law not requiring the full array of new procedures,* and the majority observed that the old procedures were not so unreliable as to warrant full retroactivity. Wolff v. McDonnell, 418 U.S. 539, 573, 94 S.Ct. 2963, 2983, 41 L. Ed.2d 935 (1974).

If *Wolff* covers Wilwording's case, then his claim, however justified on the merits and however diligently pursued for five years, might be denied without an evidentiary hearing as one in which no relief can be granted.[6]

---

6. *Wolff* leaves uncertain the extent of nonretroactivity—that is, whether the doctrine will apply to pending cases or will affect only the litigants in *Wolff* itself. As the *Wolff* opinion notes, many district courts and courts of appeals have in varied forms long recognized that procedural due process applies to prison disciplinary procedures. 418 U.S. at 572 n. 20, 94 S.Ct. at 2963 n. 20. The Supreme Court has previously given general recognition to the applicability of procedural due process to prison discipline claims. *Cf.* Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1971). Thus, equitable principles would seem to require some form of procedural due process applicable to prisoners' claims which were pending in the courts at the time of the *Wolff* decision. We need not decide this precise issue here since, as we will discuss, petitioner's claim does not rest solely on the denial of procedural due process, but in addition on the allegation of a total absence of evidence linking him to the offense for which he was punished.

 We do not believe that that result is required in this case. Wilwording's claims are based not so much on the failure of Missouri's penitentiary to accord him procedural due process, the area defined in *Wolff*, as on a denial of the substance of due process. Wilwording alleges that he was punished for having allegedly helped plot an escape, and that that punishment was imposed without *any* evidence being offered against him. Punishment imposed in the complete absence of evidence against the accused in a criminal case has long been recognized as arbitrary and hence invalid. "Just as 'Conviction upon a charge not made would be sheer denial of due process,' so is it a violation of due process to convict and punish a man without evidence of his guilt." Thompson v. Louisville, 362 U.S. 199, 206, 80 S.Ct. 624, 629, 4 L.Ed.2d 654 (1960); *accord,* Gregory v. Chicago, 394 U.S. 111, 112, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969). Protection of individuals against arbitrary government action is the "great purpose" of the due process clause. Dent v. West Virginia, 129 U.S. 114, 124, 9 S.Ct. 231, 32 L.Ed. 623 (1889). Long before the requirements of *procedural* due process were imposed on prison disciplinary proceedings, this court recognized that those proceedings must at least afford *substantive* due process. We noted the history of this dichotomy in McDonnell v. Wolff, 483 F.2d 1059 (8th Cir. 1973):

> The trial court properly held that Fourteenth Amendment substantive due process requirements are applicable to disciplinary proceedings. Even in those earlier cases in which we held procedural due process inapplicable in comparable settings, we recognized that administrative determinations must not be arbitrary. See, Morrissey v. Brewer, *supra,* 443 F.2d [942] at 950 [8th Cir.]; Douglas v. Sigler,

386 F.2d 684, 687 (8th Cir. 1967). It would serve little purpose to require fair procedures but to permit arbitrary results. The procedures are not ends in themselves, but a means to insure that decisions imposing substantial penalties will be based on the knowledge that grounds for the imposition of the penalties exist. The courts, therefore, have a limited right to review the merits of decisions imposing substantial penalties. In each case, the sole concern of the court must be whether the decision of the prison authorities is arbitrary and capricious. It must not substitute its judgment for that of the prison authorities.

*Id.* at 1063.

 We of course express no opinion on the merits of Wilwording's petition; whether prison officials in fact had evidence to support the deprivation of good time, solitary confinement, and charges in his record for parole is for the trial court to determine. "[W]hether the charges against petitioner were so totally devoid of evidentiary support as to render his [punishment] unconstitutional . . . turns not on the sufficiency of the evidence, but on whether [there was] any evidence at all." Thompson v. Louisville, *supra* 362 U.S. at 199, 80 S.Ct. at 625. We conclude that Wilwording's allegation that he is subjected to continuing punishment without any evidence against him adequately raises a claim for relief which is beyond the scope of and hence not foreclosed by the nonretroactivity holding of *Wolff.*

The case is remanded to the district court with directions that the petitioner be granted an evidentiary hearing as to his claim relating to the loss of good time which allegedly was deprived him by a denial of due process of law.

Judgment reversed and remanded.