Alan Daniel **WILWORDING**,
Petitioner,

v.

Donald W. **WYRICK**, Warden, Missouri State Penitentiary, Jefferson City, Missouri, Respondent.

No. 18049–4.

United States District Court,
W. D. Missouri, W. D.

Nov. 20, 1975.

Thomas Bradshaw, Asst. Fed. Public Defender, Kansas City, Mo., for petitioner.

Paul Otto, Jr., Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## FINDINGS, OPINION, AND JUDGMENT GRANTING IN PART AND DENYING IN PART THE PETITION FOR WRIT OF HABEAS CORPUS

**ELMO B. HUNTER, District Judge.**

Petitioner, Alan Daniel Wilwording, in this petition for federal writ of habeas corpus seeks to challenge the constitutionality of disciplinary procedures affecting him in 1969 and resulting in loss of good time and "blood time" credit on his sentence of 20 years' imprisonment imposed by the Circuit Court of Greene County, Missouri in June 1964. The case is presently before the undersigned Judge upon transfer from Division III of the Court following a remand by the United States Court of Appeals for the Eighth Circuit for an evidentiary hearing on the claims raised in petitioner's application for habeas corpus relief. *Wilwording v. Swenson,* 502 F.2d 844 (8th Cir. 1974).

The background of this litigation wherein petitioner now seeks the restoration of 66 days good time and 225 days "blood time" which he alleges was unconstitutionally denied him is reported in a series of lengthy opinions by the District Court, the United States Court of Appeals for the Eighth Circuit, and the United States Supreme Court. That history will not be repeated here or interpreted by the undersigned judge as a part of this opinion. The reader is however referred to the following reported and unreported cases for the background and collateral matters to the instant petition for writ of habeas corpus. *Wilwording v. Swenson,* 439 F.2d 1331 (8th Cir. 1971); *Wilwording v. Swenson,* 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); *Wilwording v. Swenson,* No. 18049-3, Findings, Conclusions and Judgment filed December 4, 1973; *Wilwording v. Swenson,* 502 F.2d 844 (8th Cir. 1974); see also *Wilwording v. Swenson,* Civil Actions Nos. 1490 and 1492 (W.D.Mo.1971); see also *Wilwording v. Swenson,* 326 F.Supp. 1145 (W. D.Mo.1970); *Wilwording v. Swenson,* 446 F.2d 553 (8th Cir. 1971).

On April 30, 1975, pursuant to the mandate of the United States Court of Appeals for the Eighth Circuit in *Wilwording v. Swenson,* 502 F.2d 844 (1974), petitioner was granted a full evidentiary hearing as to his claim relating to the loss of good time which allegedly was deprived him by a denial of due process of law. Petitioner was also afforded a hearing on his claim relating to loss of "blood time" allegedly deprived him by the denial of due process.[1] The Court was advised by counsel subsequent to the evidentiary hearing in this cause, that petitioner has been released from the Missouri State Penitentiary on parole. Because the claims herein relate to the duration of petitioner's sentence, the Court does not deem the issues herein to be moot by reason of petitioner's present status as a parolee.

The claims of petitioner in the instant cause as presently asserted by him and as interpreted by the various courts which have considered his claims are as follows:

In connection with petitioner's confinement in maximum security from April 18, 1969 to September 22, 1969 and petitioner's confinement to "J" Hall and maximum security from October 20, 1969 to February 12, 1971, petitioner was not afforded a hearing of any type to determine whether his commitment to maximum security was justified or proper or based on any evidence in violation of petitioner's

---

1. Subsequent to the most recent mandate and opinion of the Court of Appeals relating to petitioner's claimed loss of good time, and prior to the evidentiary hearing in this cause, petitioner raised an additional claim in this action that the alleged denial of due process also caused him to be deprived of "blood time" which he would have otherwise been entitled to. Although, it appeared that this precise contention had not been presented to the Missouri Court, this Court, in the interest of finally disposing of this litigation, permitted petitioner to amend his petition to include his claims relating to "blood time".

rights to substantive and procedural due process under the Fourteenth Amendment to the United States Constitution.

As a result of the confinement in maximum security or J–Hall, petitioner was deprived of good time of 3 days per month, was deprived of the opportunity to earn 15 days per month "blood time", and petitioner's institutional record was tainted to effect his parole eligibility consideration.

Prior to the evidentiary hearing in this cause on April 30, 1975, it was stipulated by the parties as follows:

1. That the respondent would not contend that petitioner was foreclosed from raising the claims asserted herein by reason of prior actions brought by petitioner under 42 U.S.C. § 1983.

2. That respondent would not raise the defense of petitioner's failure to exhaust state remedies with respect to his claim that he was denied due process of law in connection with his commitment to maximum security and J–Hall in April and October 1969.

3. That the records of petitioner's commitment to maximum security and J–Hall in April and September of 1969 and the reasons for that commitment are available to the Board of Parole for use in connection with petitioner's parole consideration.

In the instant proceeding, petitioner seeks an adjudication that his constitutional right to procedural and substantive due process was violated by his commitment to administrative segregation in maximum security and J–Hall in April and October 1969. As relief, petitioner seeks the restoration of good time credit for twenty-two months at the rate of 3 days per month, credit for "blood time" of 225 days (15 blood donations), and expungement of his record concerning the disciplinary actions and proceedings which resulted in his commitment to maximum security and J–Hall in April and October, 1969.

The evidence received by the Court at the hearing of this petition reveals the following.

Petitioner, Alan Daniel Wilwording, was confined in the Missouri State Penitentiary in Jefferson City, Missouri prior to 1969 and at all relevant times mentioned herein was a prisoner confined in the Missouri State Penitentiary in Jefferson City, Missouri in the custody of the Warden of that institution.

Just prior to April 18, 1969, Captain Wyrick, who was at that time Administrative Assistant to Warden Harold R. Swenson and responsible for investigation of assaults, murders, and escape attempts occurring at the penitentiary, received information that Alan D. Wilwording, and at least two other inmates were involved in a plot to escape. Upon receipt of this information, and on April 18, 1969, petitioner and the two or three other inmates suspected were immediately placed in the "Administrative Segregation Unit" or maximum security unit of the penitentiary. Petitioner was not afforded notice of the charges or a hearing or appearance of any kind prior to his placement in maximum security on April 18, 1969. However, on April 22, 1969, petitioner was taken before the "Classification Committee" for a proceeding before that board.[2] Following that proceeding, petitioner was classified to and returned to the maximum security unit of the penitentiary where he remained until September 22, 1969 when he was returned to the general population by the Classification Committee.

On October 11, 1969, a general work strike occurred at the Missouri State Penitentiary. By reason of that strike, and action of the penitentiary administration virtually all work within the penitentiary came to a halt, and the situation at the penitentiary was deemed an

---

2. "The Classification Committee" is a body created by statute, § 216.212 RSMo. (1969).

emergency.[3] In order to determine which inmates actually wished to return to work, the penitentiary administration presented to the inmates a form for their signature which gave the inmate's indication that he wished to continue work. Those inmates who refused to complete that form were considered to be refusing to work and immediately placed in administrative segregation in either the maximum security unit of the penitentiary or in "J–Hall". Petitioner at that time refused to execute the form indicating his willingness to return to work, and on October 20, 1969, he was placed in administrative segregation in J–Hall. Petitioner was not afforded a hearing or appearance prior to placement in J–Hall on October 20, 1969. On November 5th he was moved from J–Hall to the maximum security unit at the penitentiary.

On November 10, 1969, petitioner was taken before the "Classification Committee," and following the proceeding before that committee, petitioner was "classified" to administrative segregation in the maximum security unit where he remained until May 12, 1970, when he was returned to the administrative segregation unit in J–Hall. Petitioner was released from J–Hall to the general population on February 12, 1971.

Prior to his placement in administrative segregation on April 18, 1969 and October 20, 1969, petitioner was earning administrative good time credit at the rate of 8 days per month. During his confinement in administrative segregation from April 18, 1969 until September 22, 1969 and from October 22, 1969 until February 12, 1971 petitioner earned administrative good time at the rate of 5 days per month. Prior to his confinement to administrative segregation on both occasions, petitioner was within that class of prisoners who were permitted to donate blood twice per year to the Red Cross and at any other time that the prisoner's particular type of

blood was needed by local hospitals, other prisoners, or patients in Missouri State Hospital at Fulton, Missouri, although prisoners were not ordinarily permitted to give blood more than once every 30 days. Inmates were awarded 15 days credit on their sentence for each blood donation. While confined in administrative segregation, petitioner was not within the class of inmates permitted to donate blood or receive credit for donations.

This cause has been remanded by the Court of Appeals for a determination of whether petitioner was afforded constitutionally required procedural and substantive due process in connection with the disciplinary action which resulted in his placement in administrative segregation and the loss of good time in April and October of the year 1969. Thus the primary issues involved herein center on the events which occurred immediately prior to and on April 18, 1969, October 20, 1969, and November 5, 1969, and the proceedings which occurred before the Classification Committee on April 22, 1969 and November 10, 1969.

The regulations and ordinary practices in effect at the Missouri State Penitentiary in 1969 provided that an inmate who was charged with an infraction of the disciplinary rules of the institution would be brought before the Adjustment Board prior to disciplinary action being taken. It is undisputed in this cause that petitioner was not afforded any type of hearing or appearance before the Adjustment Board prior to being placed in maximum security on April 18, 1969, in J–Hall on October 20, 1969, and in maximum security on November 5, 1969. The reasons given by the then Assistant Warden of the Penitentiary, Donald W. Wyrick, was that the rule infractions of which the petitioner was suspected involved the type of emergency situation where the security of the institution required that the suspected inmate be separated from oth-

---

3. The situation in the institution at the time of the work strike was approaching riotous conditions.

er inmates to prevent further contact among inmates jointly conspiring to violate prison rules, and to prevent possible retaliation to other inmates who might be suspected of tipping the administration to the rule infraction.

This Court does not reject the argument presented by the respondent that there may exist situations where the security of the institution requires that an inmate be immediately confined apart from other inmates without a hearing before an administrative body, and that such an action may not under certain circumstances violate the federal constitutional rights of the inmate. See *Burns v. Swenson*, 430 F.2d 771 (8th Cir. 1970). However, assuming *arguendo* that the confinement of petitioner in maximum security on both occasions and confinement to J–Hall on October 20th to November 5th without evidence being presented to the Adjustment Board and without the decision of that board was constitutionally permissible in view of the emergency circumstances, the question remains as to whether petitioner was afforded his constitutional right to procedural and substantive due process in the proceedings before the Classification Committee or some other body subsequent to his confinement for disciplinary purposes.[4]

### The April, 1969, Hearing

At the evidentiary hearing in this cause, petitioner testified that on April 22, 1969, he personally appeared before the Classification Committee and learned of a memorandum report to the Committee from the Administrative Assistant to the Warden of the Penitentiary, Captain Wyrick, that he had information that petitioner was involved in an escape plot. Petitioner testified that he was not advised of the information to which Captain Wyrick's memorandum referred, that there were no witnesses at the proceeding to present evidence to the Classification Committee, that there was no physical evidence presented to the Classification Committee, that he had received no prior notice of the charge, and that he was not provided any opportunity to present evidence or witnesses. Petitioner further testified that he made no request to present evidence or witnesses and that following the proceeding he was returned to maximum security where he remained until September 22, 1969.

4. Under the procedures in effect in 1969, inmates suspected of a violation of the penitentiary rules were ordinarily taken before the Adjustment Board which convened daily. That Board, on the record before it could take any of the following actions: (1) Dismiss the charges; (2) Impose a penalty of up to 10 days in punitive segregation; (3) Impose a penalty of restricted recreation privileges or a change in work assignment; (4) Recommend to the Classification Committee that the inmate be placed in maximum security; or (5) Recommend to the Classification Committee that the inmate forfeit merit time earned. The Adjustment Board did not have the power to "classify" an inmate to maximum security, but merely could recommend such a classification to the Classification Committee.

In 1969, the Classification Committee in addition to other duties acted as a review board for the actions and recommendations of the Adjustment Board with respect to disciplinary matters. The Classification Committee could order changes in work assignments or housing, accept or reject the recommendation of the Adjustment Board with respect to placement in maximum security, and if an inmate was placed in maximum security set a date for review of that placement and conduct that review on the date set. The actions of the Classification Committee were subject to review by the Warden of the Penitentiary.

Apparently, what occurred in petitioner's situation was that his placement in maximum security and administrative segregation in J–Hall without a proceeding before the Adjustment Board resulted in his case being forwarded to the Classification Committee as if the Adjustment Board had recommended his placement in that part of the penitentiary. In that context, the Classification Committee merely reviewed that placement to determine if petitioner should be placed back into the general population at that time or on some later date. See, *Burns v. Swenson*, 430 F.2d 771 (8th Cir. 1970).

The evidence presented by the respondent does not entirely dispute petitioner's testimony. Mr. Wyrick testified that he could not recall the specifics of the information upon which he formed his belief that petitioner was involved in an escape plot in 1969, and that he could not recall from whom he received the information. He stated that the information upon which he based his belief and report to the Classification Committee was filed at the time in coded envelope No. 56 in the Warden's Office, and that he had been unable to locate that envelope for purposes of evidence in the hearing in this matter some six years after the occurrence. Mr. Wyrick stated that he did not appear at the proceeding before the Classification Committee on April 22, 1969. Although mentioned in Captain Wyrick's report to the Committee, there is no evidence to establish that coded envelope No. 56 was before the Classification Committee as a part of its proceeding on April 22, 1969. Major Steel, who was a member of the Classification Committee in April 1969 testified that the Committee had access to the coded envelopes in the Office of the Warden, but that he did not recall considering a coded envelope with regard to the charge against petitioner in April 1969. Major Steel testified that the basis for the decision of the Classification Committee to classify petitioner to maximum security on April 22, 1969 was the "report" or memorandum to the Classification Committee from Mr. Wyrick. That memorandum stated as follows:

"Alan Wilwording was placed in maximum security at 8:30 a. m. on April 18, 1968. This action was taken because there is reliable information that this inmate has been plotting an escape from the penitentiary. Further information will be in coded envelope #56 in the Warden's Office. "Please handle routinely and bring Wilwording before the Classification for regular review."

In its action sheet report of the proceedings on April 22, 1969, the Classification Committee stated that the proceeding was brought about by the inter-office communication of Mr. Wyrick, and further stated as follows:

"SUMMARY

"Subject denies plotting an escape. States he did associate with inmates Patrick and Thompson but certainly not with any idea of planning to escape."

"DECISION

"To be placed in Maximum Security."

"RATIONALE

"In view of the information on file regarding subjects recent activities the Classification Committee voted to place him on Maximum Security status."

Petitioner was notified of this decision and the rationale therefor by written memorandum dated April 22, 1969. From the evidence presented, the Court finds that the only basis for the decision of the Classification Board to place petitioner in administrative segregation on April 22, 1969 was the written report of Captain Wyrick quoted above, and petitioner's statement that he had associated with inmates Patrick and Thompson.[5]

*The October, 1969, Proceedings*

The evidence presented at the hearing in this cause, established that there was in fact a general emergency and a work stoppage at the penitentiary on October 18, 1968, that petitioner was presented a

5. It is obvious that the passage of time has caused memories of this isolated event, which apparently seemed relatively unimportant at the time, to fade, and has accounted for the loss of evidence, such as coded envelope No. 56, which might have been produced at an earlier time. That absence of testimony and evidence has caused the Court to find that the only matters before the Committee were the report of Captain Wyrick and petitioner's statements to the Committee. It is however, interesting to observe that in some manner the Committee had information relating to the alleged escape plot which was *not* in Captain

'form for signature indicating that he was willing to return to work voluntarily, that he refused to sign that form, and was thereafter placed in J–Hall. Petitioner did not appear at any proceeding before the Adjustment Board prior to his placement in J–Hall for disciplinary purposes, and the Adjustment Board did not make the decision to place petitioner in that hall for purposes of discipline or administrative segregation. Petitioner's placement in J–Hall for failure to sign the form was not at any time considered or reviewed by the Classification Committee, and there was not at any time a proceeding before the Classification Committee or any other board wherein evidence was presented to establish that petitioner had refused to sign a form indicating his willingness to work in the penitentiary. Petitioner was not at any time given an opportunity to answer the charge that he had refused to sign the work form.

### The November, 1969, Proceedings

Subsequent to his confinement to J–Hall on October 20, 1969, petitioner was the subject of further disciplinary action and classification by the administration of the penitentiary. On November 5, 1969, apparently at the direction of Captain Wyrick, as Administrative Assistant to the Warden, petitioner was placed in maximum security for disciplinary purposes. This disciplinary action was not preceded by an Adjustment Board hearing, and was taken as a result of a November 4, 1969, report from Lieutenant Tandy Williams to Captain Wyrick which identified petitioner as one of the principal agitators in the work strike in

J–Hall. On November 6, 1969, it was further reported to Mr. Wyrick by Officer Shanzmeyer that upon a routine search of petitioner's property upon his arrival at the maximum security unit on November 5, 1969, he discovered a number of identification cards, social security cards, a credit card, and a car title. These items were considered contraband. On November 6, 1969, Mr. Wyrick, by written memorandum to the Director of Classification, reported that petitioner had been placed in maximum security as a result of the report of Lt. Williams and "other information identifying Wilwording as one of the principal agitators in the work strike and demonstrations that occurred from October 11, through October 19, 1969." Mr. Wyrick also reported in his memorandum that Officer Shanzmeyer had found the contraband upon a search of petitioner's property in maximum security, specified the contraband items found, and observed that the items could only be obtained from the Receiving Unit of the Penitentiary and indicated that the petitioner was an "extreme escape risk" and intended to use the contraband in connection with an escape. A copy of Lt. Williams report was attached to Captain Wyrick's November 6th report.

On the basis of the memorandum of November 6, 1969, petitioner was called before the Classification Committee for a proceeding on November 10, 1969.[6] During the proceedings before the Classification Committee, petitioner denied that he was a leader in the work stoppage, and denied that the items allegedly found in his belongings were his or that he had any knowledge of them. The

Wyrick's report, that is the names of the inmates who were alleged to have participated with the petitioner in the escape plot. Thus it is possible that the Committee had before it information in addition to the report of Captain Wyrick. However that information has not been established as a part of the record in this cause. In the absence of a showing of that information, the Court finds that the Committee had before it only the charge made in Captain Wyrick's report.

6. There is some conflict in the evidence as to the date of the November proceeding before the Classification Committee. Throughout the evidentiary hearing in this case, both November 5th and November 10th were referred to by the parties as being the date of that proceeding. The Court finds that the evidence establishes that the proceeding was held on November 10, 1969, following petitioner's placement in Maximum Security on November 5, 1969.

only material before the Classification Committee was the report of Mr. Wyrick dated November 6, 1969, and the attached report of Mr. Williams of November 4, 1969. The November 6th report was read to petitioner. No witnesses or other evidence was considered by the Committee. Petitioner testified, and the Court finds, that he received no written or oral notice of the charges against him prior to the proceeding, and that he was not provided a written statement of the evidence against him during the Classification Committee proceedings, or permitted to adduce testimony or evidence on his behalf. Petitioner was notified of the decision of the Classification Committee by written memorandum dated November 10, 1969. There is no evidence that the Classification Committee based its decision on petitioner's actions prior to October 20, 1969, relating to his refusal to sign the form indicating his willingness to work. Rather, as stated in its report, "The Classification Committee voted to place subject in Maximum Security on the basis of the report of November 4, 1969, and November 6, 1969." Following the proceeding before the Classification Committee, petitioner was returned to maximum security until May 12, 1970, when he was returned to administrative segregation in J–Hall, apparently due to his placement in that facility on October 20, 1969. Petitioner remained in J–Hall until February 12, 1971, when he was returned to the general population.

### Substantive Due Process

■■ On the basis of the evidence adduced at the hearing in this cause, it is the opinion and conclusion of the Court that the decision of the Classification Committee on April 22, 1969 to place petitioner in maximum security until September 22, 1969 was so devoid of evidentiary support as to render the punishment of petitioner by placement in maximum security in violation of his right to substantive due process as guaranteed by the Fourteenth Amendment. Therefore, the deprivation of good time

and the charges on petitioner's record which resulted from the April 22, 1969 disciplinary action were in violation of petitioner's fourteenth amendment rights, and petitioner is entitled to the restoration of the good time lost as a result of his confinement in maximum security from April 18, 1969 until September 22, 1969 and to have the charges which brought about the April 1969 action and the action of the Classification Committee in connection with those charges expunged from his prison record. *Wilwording v. Swenson*, 502 F.2d 844 (8th Cir. 1974). Petitioner's request for "blood time" credit which he might have earned while confined from April 18, 1969 until September 22, 1969 will be denied for reasons which will be discussed *infra*.

The Court further finds on the basis of the evidence adduced, that petitioner's commitment to J–Hall on October 20, 1969 until November 5, 1969 was action which was not at any time taken by a board or committee which had the authority to take or review such an action. The commitment of petitioner in J–Hall was therefore totally devoid of evidentiary support as to render the disciplinary action, by whomever taken, in violation of petitioner's right to substantive due process as guaranteed by the Fourteenth Amendment. The return of petitioner to J–Hall on May 12, 1970, was likewise unofficial disciplinary action which was totally devoid of evidentiary support as to render the action in violation of petitioner's right to substantive due process, it apparently being taken as a result of petitioner's confinement to J–Hall on October 20, 1969 without a hearing or the presentation of any evidence. Therefore, the deprivation of good time and the charges on petitioner's record which resulted from his commitment to administrative segregation in J–Hall from October 20, 1969 until November 5, 1969 and from May 12, 1970 until February 12, 1971 was in violation of petitioner's constitutional right as guaranteed by the Fourteenth Amendment. Petitioner is entitled to

the restoration of the good time lost as a result of his confinement to J–Hall and to have all records of that confinement and disciplinary action expunged from his prison record. *Wilwording v. Swenson,* 502 F.2d 844 (8th Cir. 1974). Petitioner's request for "blood time" credit which he might have earned while confined in J–Hall will be denied for reasons which will be discussed *infra.*

With regard to the placement of petitioner in maximum security on November 5, 1969, until May 12, 1970, it is the finding and conclusion of the Court that the disciplinary action taken by the Classification Committee on November 10, 1969 was on the basis of the memorandum of November 6, 1969, and the report of November 4, 1969. That decision made and disciplinary action taken by the Classification Committee on November 10, 1969, was not so totally devoid of evidentiary support so as to render the placement of petitioner in maximum security from November 5, 1969, until May 12, 1970, arbitrary or capricious or in violation of petitioner's right to substantive due process. There was substantial evidence in the form of the November 4th and November 6th reports before the committee on November 10, 1969 to support its disciplinary action. Therefore, on the basis of petitioner's contention that his punishment by placement in maximum security from November 5, 1969, until May 12, 1970, was in violation of his right to *substantive* due process, he is not entitled under the Fourteenth amendment to the restoration of good time, blood time, or the expungement of the record of that disciplinary action.

### *Procedural Due Process*

There remains to be determined in this action the question of whether or not petitioner was afforded the procedural due process required at the time of the disciplinary action which occurred on November 10, 1969. In the decision in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (June 26, 1974), the Supreme Court defined the minimum requirements of procedural due process in penitentiary disciplinary proceedings of the type which occurred in petitioner's case in November, 1969. The Supreme Court observed in the decision in *Wolff* that the standards for procedural due process announced were not to be applied retroactively. *Wolff v. McDonnell, supra,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d at 961.

In its opinion remanding this cause to the district court with directions that petitioner be granted an evidentiary hearing as to his claims relating to loss of good time, the Court of Appeals did not limit its remand to a determination of whether petitioner was deprived of *substantive* due process, and the opinion of the Court indicates that the non-retroactivity of *Wolff* may not be applicable to the instant cause which was pending at the time of the decision of the Supreme Court, although the Court of Appeals did not specifically decide the question. It is clear from the evidence adduced herein that the minimum requirements outlined in *Wolff* were not followed in the Classification Committee proceedings on November 10, 1969, and that therefore if those requirements are applied to those proceedings the petitioner is entitled to the restoration of good time and the expungement of the charges and actions from his prison record. It is therefore necessary for this Court to decide in connection with the November 10, 1969, proceedings the question raised but unanswered by the Court of Appeals in its opinion remanding this cause; that is, whether the minimum requirements outlined in *Wolff* or some other "form of procedural due process" is applicable to the proceedings which occurred on November 10, 1969, by reason of the decision in *Wolff,* and if not, whether the minimum requirements for procedural due process which were applicable at that time, if any, were followed in connection with the proceedings before the Classification Committee on November 10, 1969.

■ It is the opinion of the Court that the decision in *Wolff* establishing minimum requirements for procedural due process in prison disciplinary proceedings is not applicable to the proceedings which occurred on November 10, 1969, and resulted in petitioner's confinement to maximum security from November 5, 1969, until May 12, 1970. In view of the specific language expressed in *Wolff,* the Court does not consider pertinent that this habeas corpus petition was pending on appeal at the time of the Supreme Court's decision in *Wolff v. McDonnell.* In that decision, the Supreme Court stated as follows:

"The question of retroactivity of new procedural rules affecting inquiries into infractions of prison discipline is effectively foreclosed by this Court's ruling in *Morrissey* that the due process requirements there announced were to be 'applicable to *future* revocations of parole,' 408 U.S. at 490, 92 S.Ct., at 2604, 33 L.Ed.2d 484 (emphasis supplied)."

It is the opinion of the Court that if the Supreme Court intended the *Wolff* decision to be applicable to cases pending in the district courts or courts of appeal at the time of the decision, it would have so stated in its opinion.

■ Further, this Court is of the opinion that in view of the procedures which were followed in the proceedings before the Classification Committee involving petitioner on November 10, 1969, equitable principles do not dictate that petitioner's good time lost as a result of those proceedings be restored. Petitioner was brought before the Classification Committee in its first session subsequent to November 5, 1969, was given notice of the rule infractions for which he was charged, was given an opportunity to explain his conduct and deny the charges in the presence of the Committee, and was given written notice of the decision of the Committee and the basis of that decision. The Court finds that these procedures constituted some "form of procedural due process" sufficient to satisfy any equitable principles brought into play by the fact that this petition was pending at the time of the decision in *Wolff.* And, the Court further concludes that the procedures followed during the Committee proceedings held in petitioner's case on November 10, 1969, satisfied the minimum procedural due process standards required at that time by the Constitution and court decisions. See *Douglas v. Sigler,* 386 F.2d 684 (8th Cir. 1967); *Morrissey v. Brewer,* 443 F.2d 942 (8th Cir. 1971); *Burns v. Swenson,* 430 F.2d 771 (8th Cir. 1970). The evidence adduced before this Court establishes that petitioner was afforded due process and equitable treatment in connection with his placement in maximum security on November 5, 1969, and that the decision of the Classification Committee on November 10, 1969, with regard to petitioner was just and fair. The actions of the penitentiary officials in 1969 were completely within the substantive and procedural due process standards announced by the Eighth Circuit Court of Appeals in *Burns v. Swenson, supra* on August 31, 1970. Therefore, the Court declines to order that petitioner be credited with good time not earned from November 5, 1969, to May 12, 1970, on the basis of his alleged denial of due process or on the basis of other equitable principles.

There remains for determination in this cause petitioner's request for 15 days administrative "blood time" credit for each 45 day period he was confined in maximum security or J–Hall as a result of the action of the penitentiary officials on April 18, 1969, and October 20, 1969. Specifically, petitioner claims "blood time" in the amount of 62 days for his confinement in maximum security from April 18, 1969 until September 22, 1969 and in the amount of 100 days for his confinement in J–Hall from October 20, 1959, until November 5, 1969,

458

and from May 12, 1970, until February 12, 1971.[7]

 The credible evidence presented on petitioner's administrative "blood time" claim established that petitioner had not requested to and had not made any blood donations or received credit for "blood time" at any time prior to June 28, 1974. In fact the only time petitioner donated blood while in the penitentiary was on June 28, 1974. There is no credible evidence to establish that petitioner at any time donated blood and was not given "blood time" credit for the donation, or that he ever complained to the prison administration that he had given blood and not received credit. The Court does not find credible petitioner's testimony that he requested to donate blood at some unspecified time while he was confined in maximum security and that his request was refused. From the credible evidence adduced, it is the finding of the Court that petitioner has failed to establish that he would have donated blood and received the credit for the donation if he had not been confined in maximum security or J–Hall. The evidence establishes that in all probability petitioner would not have donated blood had he been in the general population during the periods he was in maximum security and J–Hall, as petitioner had not previously donated blood while in the general population, had not previously made a request to donate blood, and did not make a request to donate blood while in maximum security or J–Hall. Therefore, petitioner's contention that he is entitled to receive "blood time credit" for the periods of time the Court has determined he was in disciplinary confinement without having been afforded substantive due process is deemed without merit, and his request for the award of "blood time" will be denied.

Accordingly, for the reasons stated above, the petition for writ of habeas corpus will be granted to the extent that it is hereby,

Ordered that petitioner's sentence be credited by respondent with 18 days good time for the period he was confined in maximum security from April 18, 1969, to September 22, 1969. It is further

Ordered that petitioner's sentence be credited by respondent with 30 days good time for the period he was confined in administrative segregation in J–Hall from October 20, 1969 to November 5, 1969 and from May 12, 1970 to February 12, 1971. It is further

Ordered that respondent expunge from petitioner's institutional record the fact of and reasons for petitioner's commitment to maximum security from April 18, 1969 to September 22, 1969 and the fact of and reasons for petitioner's commitment to J–Hall from October 20, 1969 to November 5, 1969 and from May 12, 1970 to February 12, 1971. It is further

Ordered that in all other respects the petition for writ of habeas corpus be denied.

---

7. Petitioner's claim for blood time in the amount of 63 days for his confinement in maximum security from November 5, 1969, until May 12, 1970, will be denied for the reasons stated in connection with his claim for good time for that period.