ON PETITION FOR REHEARING
PER CURIAM.
After we filed our opinion and judgment in this cause, the Supreme Court of the United States rendered two decisions which cause us to modify that opinion.
Montanye v. Haymes, opinion filed June 25, 1976, - U.S. -, 96 S.Ct. 2543, 49 L.Ed.2d-, reversed a circuit court judgment that had held the Due Process Clause of the Fourteenth Amendment required a hearing before a prisoner could be transferred from one New York state prison to another for disciplinary reasons. The Court said:
“We therefore disagree with the Court of Appeals’ general proposition that the Due Process Clause by its own force requires hearings whenever prison authorities transfer a prisoner to another institution because of his breach of prison rules, at least where the transfer may be said to involve substantially burdensome consequences. As long as the conditions or degree of confinement to which the prisoner is subjected are within the sentence imposed upon him and are not otherwise *678 violative of the Constitution, the Due Process Clause does not in itself subject an inmate’s treatment by prison authorities to judicial oversight. The Clause does not require hearings in connection with transfers whether or not they are the result of the inmate’s misbehavior or may be labeled as disciplinary or punitive.” - U.S. at -, 96 S.Ct. at 2547.
Because the Due Process Clause required no hearing, none was necessary unless New York law required one. Since no New York statute made a hearing mandatory, all transfers were discretionary. Therefore the New York prison authorities were not required to hold a hearing before transferring a prisoner, even for punitive reasons.
Meachum v. Fano, opinion filed June 25, 1976, - U.S. -, 96 S.Ct. 2532, 49 L.Ed.2d -, involved (among other persons) three Massachusetts prisoners who were transferred to a maximum security prison that had substantially less favorable living conditions than the prison from which they had come. Although the transfers came after an administrative hearing, the United States District Court ruled that the hearing was inadequate because the authorities heard evidence adverse to the prisoners outside the presence of those prisoners. The circuit court of appeals affirmed, but the Supreme Court reversed:
“. . . we cannot agree that any change in the conditions of confinement having a substantial adverse impact on the prisoner involved is sufficient to invoke the protections of the Due Process Clause. The Due Process Clause by its own force forbids the State from convicting any person of crime and depriving him of his liberty without complying fully with the requirements of the Clause. But given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and to subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution. The Constitution does not require that the State have more than one prison for convicted felons; nor does it guarantee that the convicted prisoner will be placed in any particular prison if, as is likely, the State has more than one correctional institution. The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant’s liberty interest to empower the State to confine him in any of its prisons.
“Neither in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the state prison system. Confinement in any of the State’s institutions is within the normal limits or range of custody which the conviction has authorized the State to impose. That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules.
“Our cases hold that the convicted felon does not forfeit all constitutional protections by reason of his conviction and confinement in prison. He retains a variety of important rights that the courts must be alert to protect. See Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974), and cases there cited. But none of these cases reaches this one; and to hold as we are urged to do that any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts.
“Transfers between institutions, for example, are made for a variety of reasons and often involve no more than informed predictions as to what would best serve institutional security or the safety and *679 welfare of the inmate. Yet under the approach urged here, any transfer, for whatever reason, would require a hearing as long as it could be said that the transfer would place the prisoner in substantially more burdensome conditions that he had been experiencing. We are unwilling to go so far.” - U.S. at -, 96 S.Ct. at 2538.
As in Montanye v. Haymes, state law in Meachum v. Fano made transfers discretionary, and prisoners had no right to remain in certain prisons “defeasible only upon proof of specific acts of misconduct.” - U.S. at -, 96 S.Ct. at 2539.
“A prisoner’s behavior may precipitate a transfer; and absent such behavior, perhaps transfer would not take place at all. But, as we'have said, Massachusetts prison officials have the discretion to transfer prisoners for any number of reasons. Their discretion is not limited to instances of serious misconduct. As we understand it no legal interest or right of these respondents under Massachusetts law would have been violated by their transfer whether or not their misconduct had been proved in accordance with procedures that might be required by the Due Process Clause in other circumstances. Whatever expectation the prisoner may have in remaining at a particular prison so long as he behaves himself, it is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all.
“Holding that arrangements like this are within reach of the procedural protections of the Due Process Clause would place the Clause astride the day-to-day functioning of state prisons and involve the judiciary in issues and discretionary decisions that are not the business of federal judges. We decline to so interpret and apply the Due Process Clause. The federal courts do not sit to supervise state prisons, the administration of which is of acute interest to the States.” - U.S. -, 96 S.Ct. at 2540.
Because the Due Process Clause requires no hearing before a Florida state prisoner is transferred and because no Florida statute places any restrictions on the transfer of state prisoners, the Florida prison authorities have the discretion to make transfers of such prisoners. We therefore recede from the opinion we filed in this cause on June 18, 1976, insofar as that opinion held that a Florida state prisoner must be afforded a hearing before he is transferred from one institution to another.
In addition, a rereading of Wilwording v. Swenson, 502 F.2d 844 (8th Cir. 1974), impels us to recede from the portion of the opinion of June 18th dealing with the second appellate question (that concerning purportedly improper notations on appellant’s prison record which allegedly had an adverse effect on appellant’s consideration for parole).
We had thought the Wilwording case supported the proposition that prison authorities were required to give a prisoner an opportunity to be heard before they might place on the prisoner’s record notations affecting the prisoner’s consideration for parole. Upon further consideration we find we were mistaken. Therefore, we agree with the trial court’s conclusion that appellant’s petition was without merit.
If a prisoner is denied parole after consideration, Section 947.17(7), Florida Statutes 1975, requires that the offender be notified of the reasons for such denial. Here, appellant alleges there were some conclusionary statements and recommendations noted on his record jacket such as “failure to adjust; recommend no parole, no work release, no other benefits.” He then alleges those notations resulted in a denial of parole. His conclusion is not supported by any documentary evidence attached to the petition. In our judgment that naked allegation is insufficient to support the issuance of a writ of habeas corpus. Should we reverse the order denying appellant’s petition, we would open the door to every prisoner in the Division of Corrections to seek habeas corpus every time an adverse *680 notation is made in his file by simply alleging that it precluded his parole.
Accordingly, the petition for rehearing is granted and we recede from and withdraw our opinion filed June 18, 1976, and affirm the order appealed from.
MAGER, C. J., and DOWNEY and ALDERMAN, JJ., concur.