**LA PREFERIDA, INC., an Illinois Corporation, Plaintiff–Appellant,**

v.

**CERVECERIA MODELO, S.A. de C.V., a Mexican Corporation, Defendant–Appellee.**

**No. 89–2089.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 17, 1990.

Decided Sept. 27, 1990.

Rehearing Denied Dec. 7, 1990.

Kevin M. Forde, Richard J. Prendergast, Joseph E. Tighe, Mary Anne Mason, James Van Dieren; Mark R. Valley, Cannizzaro, Ballard & Valley, Chicago, Ill., for plaintiff-appellant.

Ronald R. Peterson, Catherine Steege, Marshall J. Schmitt, Jenner & Block, Michael J. Rovell, Chicago, Ill., for defendant-appellee.

Before POSNER, FLAUM and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

La Preferida brought two separate actions against Cerveceria Modelo (Modelo) concerning the distribution rights of beverages manufactured under the "Corona" trademark. The district court entered summary judgment in favor of Modelo in both cases. La Preferida appeals these judgments. We affirm in part and reverse in part.

## I

## BACKGROUND

### A. *The Underlying Transaction*

La Preferida is a Chicago-based distributor of nonalcoholic and alcoholic beverages. Cerveceria Corona, Inc. (Corona), which is not a party to these proceedings, operated a brewery in Puerto Rico until December 1986. Corona was the initial owner of the "Corona" trademark, under which it brewed "Corona Cerveza" beer and "Malta Corona," a nonalcoholic drink. The company began selling beer in the United States under its "Corona" trademark in July 1957. On September 10, 1976, La Preferida and Corona entered into an exclusive distribution agreement. Pursuant to this agreement, the plaintiff received the exclusive right to sell and distribute in the United States products manufactured under the "Corona" trademark. The duration of the agreement was indefinite, although Corona had the power to terminate. it for cause. Following execution of the agreement, La Preferida sold the following quantities of Corona's beer: none in 1976; 1750 cases in 1977; 4685 cases in 1978; none after 1978.

Modelo, a Mexican corporation, also brews, manufactures, and distributes beer in parts of the United States. Between

1964 and 1977, Modelo registered trademarks in six states for its "Corona" and "Corona Extra" brands. In 1981, La Preferida, which wanted to expand its distribution of products under the "Corona" name, attempted to negotiate an agreement whereby Corona would allow Modelo to use the "Corona" trademark for its beer sold in the United States; La Preferida would act as Modelo's distributor. No agreement was reached, although Modelo continued to sell its "Corona" and "Corona Extra" beer in the United States. On August 11, 1982, La Preferida's counsel wrote to Modelo asserting Corona's trademark rights against Modelo.

On August 25, 1982, Corona terminated the 1976 distribution agreement. The reason given by Corona was dissatisfaction with La Preferida's distribution of "Malta Corona."[1] The termination also was based, according to Corona, on La Preferida's August 11 letter to Modelo, which had not been authorized by Corona and thus violated the 1976 agreement. More than a year after terminating its agreement with La Preferida, Corona entered into several "concurrent use" agreements with Modelo whereby Modelo acquired the right to distribute products under the "Corona" name in thirty-seven states.

### B. *The Bankruptcy Proceedings*

On September 18, 1984, Corona filed for bankruptcy, pursuant to Chapter 11, in the United States Bankruptcy Court for the District of Puerto Rico. La Preferida filed a proof of claim in the bankruptcy court alleging that Corona had breached the 1976 distribution agreement and claiming damages in the amount of $4,000,000. In its objection to La Preferida's proof of claim, Corona alleged that it had terminated the 1976 agreement and that the agreement therefore was not part of the bankruptcy estate. Corona also moved to reject that agreement if the court concluded that it had not been terminated.

Shortly after La Preferida filed its proof of claim, Corona requested permission of the bankruptcy court to sell its trademark rights to Modelo. La Preferida objected to the proposed sale, based on its alleged interest in the trademarks under the 1976 agreement, but later withdrew voluntarily the objection. The bankruptcy court then approved the sale of Corona's trademark rights to Modelo for $1,800,000. In the August 27, 1985, order approving the sale, the bankruptcy court provided that the trademarks were to be sold to Modelo "free and clear of all liens, claims and encumbrances." 86R.77 Ex.H at 2. The court also ordered that "[t]he liens and claims, if any, of La Preferida, Inc. ... shall attach to the cash proceeds of the sale." *Id.* at 3. Finally, the sale order provided that Modelo would acquire the trademarks pursuant to the terms of a May 1985 concurrent use agreement, which was attached to and explicitly ratified by the sale order. That agreement provided that Corona would indemnify Modelo for losses arising from claims "to distribution rights for CORONA by any distributor ... asserting such rights because of any alleged agreement or arrangement with Cerveceria Corona." *Id.* at Ex.B, p. 11. La Preferida did not appeal this order, but informed the bankruptcy court, during a hearing convened before the order was entered, that it was reserving its right to sue Modelo. Specifically, counsel for La Preferida made the following remarks:

> We are the, in our opinion, exclusive transferee of the Corona Malta and beer rights in the United States pursuant to an agreement dated September 10, 1976. . . .
>
> It's our intention to proceed with our money damage claim and any other

---

1. In a letter from James Stuart, Jr., Corona's president, to Ralph Steinbarth, La Preferida's president, Mr. Stuart stated:

    For some time now we have expressed to you our dissatisfaction with the performance of La Preferida in the distribution of our MALTA CORONA. In view of the lack of improvement in that situation and in view of your recent statement that La Preferida cannot compete effectively in the principal malta market in the United States unless MALTA CORONA is produced in the States, we have reached the decision to terminate our Distribution Agreement with you. . . .

    86R.1 Ex.C.

claims that we might have against Modelo ... but for the purposes of allowing the Debtor to proceed with its reorganization we will withdraw our formal opposition.

86R.101 Ex. 20 at 45.

Approximately eight months after the sale order, La Preferida decided to withdraw its proof of claim.[2] Because Corona had filed an objection to the proof of claim, La Preferida was required to seek leave of court to withdraw it.[3] On June 12, 1986, the bankruptcy court granted La Preferida's request and entered an order allowing La Preferida to withdraw its claim with prejudice. This consent judgment reflected an agreement between Corona and La Preferida:

> [S]aid claim [that Corona had breached the distribution agreement] is disallowed on the merits as not owed by debtor, debtor's objection to the claim [Corona's allegation that it properly terminated the 1976 agreement] is sustained and debtor's motion for leave to withdraw its request for sanctions against claimant is granted. Debtor's motion to reject a certain distribution contract between debtor and claimant is rendered moot thereby.

86R.77 Ex.J at 2–3.

The bankruptcy court subsequently entered a final order confirming Corona's plan of liquidation. The order was entered on July 28, 1987, and provided that all of Corona's executory contracts, including distribution agreements, were deemed rejected or of no force and effect.

## C. *The District Court Proceedings*

Following the bankruptcy proceedings, La Preferida filed two actions against Modelo, both of which arose out of the same factual allegations contained in La Preferida's proof of claim. In each case, La Preferida sought vindication of its purported rights under the distribution agreement with Corona. In No. 86 C 2647 (the 1986 case), La Preferida claimed that Modelo tortiously induced Corona to breach the distribution agreement. In No. 87 C 4081 (the 1987 case), La Preferida sought a declaration that its agreement with Corona was valid and enforceable against Modelo.

Modelo moved for summary judgment in the 1986 case and moved to dismiss the 1987 case. La Preferida, in turn, opposed the summary judgment motion and moved to strike Modelo's motion to dismiss.

### 1. The magistrate's report

The district court referred these motions to a magistrate, who recommended that all motions be denied.

With respect to the basic issue in the 1986 suit—whether Modelo tortiously had induced Corona to breach its agreement with La Preferida—the magistrate determined that there were disputed fact issues regarding Corona's reasons for terminating the agreement. Next, focusing on the bankruptcy court's sale of Corona's trademarks to Modelo, the magistrate was of the view that, with respect to trademark rights in the thirteen states that were not subject to any prebankruptcy agreements between Modelo and Corona, the sale order barred any further claim against Modelo. However, with respect to the remaining thirty-seven states that were the subject of prebankruptcy concurrent use agreements, the magistrate determined that there existed factual issues that precluded summary judgment. Under those agreements, reported the magistrate, it was not clear whether Corona owned the trademark rights at the time it filed for bankruptcy. Consequently, it was not clear that the bankruptcy court had authority to treat

---

2. This decision allegedly was based on two reasons. First, La Preferida believed that, as an unsecured creditor, recovery of a significant portion of its claim was unlikely. Second, Corona previously had requested sanctions against La Preferida for failing to comply with the pretrial order, and La Preferida desired to avoid "the impending requirement of the filing of a final pretrial order." Appellant's Br. at 13.

3. *See* Bankr.R. 3006 ("If after a creditor has filed a proof of claim an objection is filed thereto ... the creditor may not withdraw the claim except on order of the court after a hearing on notice to the trustee or debtor in possession, and any creditors' committee....").

them as part of Corona's bankruptcy estate and to enter a sale order with respect to them. If Corona in fact had sold its trademark rights prior to filing the Chapter 11 petition, the sale order could not adjudicate their status. Consequently, even though La Preferida, Corona, and Modelo were all parties to the sale order, it could not bar the present action on the ground of res judicata.

In the magistrate's view, the bankruptcy court's later order approving the withdrawal of La Preferida's claim did not preclude this subsequent suit on the ground of collateral estoppel. He noted:

> The order disallowing [La] Preferida's claim was a consent judgment. As to the merits of the claim, there was no evidentiary hearing or ruling on a dispositive motion and the court did not make any findings of fact or enter any conclusions of law. The claim was simply withdrawn with prejudice.

86R.12 at 21. Moreover, added the magistrate, Modelo had produced no evidence that the parties intended to bar litigation of La Preferida's claims against Modelo.

### 2. The district court's ruling

Both parties filed objections to the magistrate's recommendations. The district court then conducted a de novo review of the record and, with respect to each lawsuit, declined to accept the report and recommendation of the magistrate.

#### a. *the 1986 case*

The district court concluded that the consent judgment, to which La Preferida was a party in the bankruptcy proceedings, conclusively determined that Corona had not breached the 1976 distribution agreement. Accordingly, the court concluded that La Preferida was barred by collateral estoppel from relitigating this same issue in its 1986 suit. Because proof of a breach was neces-

sary to establish that Modelo tortiously had induced the breach and La Preferida would be unable to establish this element, the court granted Modelo's motion for summary judgment.

#### b. *the 1987 suit*

With respect to the 1987 case, the district court granted Modelo's motion [4] on the basis of both res judicata and collateral estoppel. Disagreeing with the magistrate, the district court concluded that the concurrent use agreements between Modelo and Corona did not constitute a sale or assignment of Corona's trademark rights to Modelo in the thirty-seven states covered by the agreements; thus, the trademark rights in all fifty states were part of Corona's bankrupt estate and subject to the bankruptcy court's sale order. Because Modelo and La Preferida were parties to the order that both approved the sale of Corona's trademark rights and extinguished any distribution rights La Preferida once had, the district court concluded that La Preferida was barred by res judicata from again raising the same claim against Modelo in the 1987 suit.[5] Accordingly, the court determined that La Preferida was obligated to pursue its claim in the bankruptcy proceedings.

The district court also determined that, notwithstanding the propriety of summary judgment on the basis of res judicata, La Preferida was collaterally estopped from asserting that it retained valid distribution rights under the 1976 agreement or that such rights had been transferred to Modelo. The court concluded that the order denying La Preferida's proof of claim conclusively had determined that Corona properly terminated the agreement. Because a necessary element of La Preferida's claim was the existence of valid rights under the distribution agreement, which La Preferida would be barred from arguing, the court

---

**4.** Because both the parties and the court relied on matters outside of the pleadings to resolve the issue raised in the 1987 case, the district court treated Modelo's motion to dismiss as a motion for summary judgment.

**5.** In addition to concluding that res judicata applied on the basis of the sale order, the district court also determined that res judicata barred the 1987 case based on the bankruptcy court's order denying La Preferida's proof of claim and the order confirming Corona's plan of liquidation.

entered summary judgment in favor of Modelo.

## II

## ANALYSIS

### A. *Standard of Review*

Our standard for assessing the grant of a summary judgment motion is clear. We review de novo the controlling law and the district court's conclusions.[6] *PPG Indus. v. Russell*, 887 F.2d 820, 823 (7th Cir.1989). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the nonmoving party. *Hines v. British Steel Corp.*, 907 F.2d 726, 728–29 (7th Cir.1990). Summary judgment should not be granted if the evidence supports alternate inferences. *Id.; see LHLC Corp. v. Cluett, Peabody & Co.*, 842 F.2d 928, 935–36 (7th Cir.), *cert. denied*, 488 U.S. 926, 109 S.Ct. 311, 102 L.Ed.2d 329 (1988).

**6.** We note preliminarily that, to the extent La Preferida's position rests on a claim that the district court erroneously rejected the magistrate's recommended findings, that claim must fail. We do not reassess the magistrate's determinations; rather, we review de novo the district court's conclusions, which were reached following that court's own de novo review of the record created by the magistrate, *see* Fed.R. Civ.P. 72(b) (following objections by a party to a magistrate's recommendations, "[t]he district judge to whom the case is assigned shall make a de novo determination upon the record"). We also note that, because our jurisdiction is based on diversity, state substantive law governs the parties' rights and responsibilities on the underlying claims. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *PPG Indus. v. Russell*, 887 F.2d 820, 823 (7th Cir. 1989). The parties agree that Illinois law governs in this case. However, we apply federal principles of preclusion. *See Teamsters Local*

### B. *The 1986 Case*

In order to withstand Modelo's motion for summary judgment in the 1986 case, La Preferida was required to demonstrate that there was sufficient evidence from which a jury could find that Modelo tortiously induced Corona to breach the 1976 distribution agreement. *See Hines*, at 728–29. To establish this tortious interference claim, La Preferida would have had the burden of proving at trial the following elements: (1) the existence of a valid and enforceable contract between Corona and La Preferida; (2) Modelo's awareness of this contractual relation; (3) Modelo's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach of the contract by Corona, caused by Modelo's wrongful conduct; and (5) damages. *See Galinski v. Kessler*, 134 Ill.App.3d 602, 89 Ill.Dec. 433, 439, 480 N.E.2d 1176, 1182 (1985). At this juncture, our focus must be on the first element. If Corona lawfully terminated the 1976 agreement, Modelo cannot be held liable for causing an unlawful breach. Accordingly, we must determine whether, pursuant to the doctrine of collateral estoppel,[7] it already has been conclusively determined that Corona did not terminate unlawfully the distribution agreement.

For collateral estoppel to apply, four elements must be met:

*282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 525 (7th Cir.1985); *Bankers Trust Co. v. Old Republic Ins. Co.*, 697 F.Supp. 1483, 1485–86 (N.D.Ill.1988).

**7.** As used in this opinion, "collateral estoppel" is synonymous with the concept of "issue preclusion," which " 'refers to the effect of a judgment in foreclosing relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in the initial action.' " *LaSalle Nat'l Bank of Chicago v. County of DuPage*, 856 F.2d 925, 930 n. 2 (7th Cir.1988) (quoting *Kirk v. Board of Educ.*, 811 F.2d 347, 351 n. 7 (7th Cir.1987)), *cert. denied*, — U.S. —, 109 S.Ct. 1536, 103 L.Ed.2d 840 (1989). This concept is to be distinguished from "res judicata," or "claim preclusion." Claim preclusion refers to " 'the preclusive effect of a judgment in foreclosing litigation of matters that were or could have been raised in an earlier suit.' " *Id.* (quoting *Kirk*, 811 F.2d at 351 n. 7).

1) the issue sought to be precluded must be the same as that involved in the prior action, 2) the issue must have been actually litigated, 3) the determination of the issue must have been essential to the final judgment, and 4) the party against whom estoppel is invoked must be fully represented in the prior action.

*Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987); *see Gray v. Lacke,* 885 F.2d 399, 406 (7th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1476, 108 L.Ed.2d 613 (1990). Thus, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *see also Cohen v. Bucci,* 905 F.2d 1111, 1112 (7th Cir.1990) (collateral estoppel, based on bankruptcy court's prior judgment, barred subsequent action because "[i]ssue preclusion applies to a question that has been 'actually litigated and determined by a valid and final judgment, [if] the determination is essential to the judgment'") (quoting Restatement (Second) of Judgments § 27 (1982)). Because collateral estoppel is an affirmative defense, *see Blonder–Tongue Laboratories, Inc. v. University of Ill. Found.,* 402 U.S. 313, 350, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971); *see generally Horn v. City of Chicago,* 860 F.2d 700, 703 n. 6 (7th Cir.1988), Modelo has the burden of establishing that it exists.

La Preferida does not dispute that the issue sought to be precluded in this case— whether the 1976 distribution agreement between Corona and La Preferida was lawfully terminated or unlawfully breached— is the same issue that was involved in Corona's bankruptcy proceedings. Nor does La Preferida claim that it was not fully represented in those proceedings. Rather, La Preferida maintains that the issue of whether Corona breached the 1976 agreement was neither actually litigated in nor necessarily determined by the bankruptcy court.

In determining whether an issue has been litigated in an earlier case, a full trial on the merits in the earlier action is not an absolute prerequisite. *See, e.g., Klingman,* 831 F.2d at 1296 (consent judgment given collateral estoppel effect where parties clearly intended the judgment to determine finally that debt owed to plaintiff would not be dischargeable in a bankruptcy proceeding); *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n,* 804 F.2d 390, 394–95 (7th Cir.1986) (denial of a motion to dismiss was sufficiently final for collateral estoppel purposes where court in prior action had to have rejected each ground raised in order to deny motion). *See generally* 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4443 (1981). However, consent judgments, while settling the issue definitively between the parties, normally do not support an invocation of collateral estoppel. *See, e.g., Lawlor v. National Screen Serv. Corp.,* 349 U.S. 322, 327, 75 S.Ct. 865, 868, 99 L.Ed. 1122 (1955) (judgment dismissing prior suit "with prejudice" that was unaccompanied by findings was res judicata of the same cause of action but did not constitute issue preclusion); *Wilwording v. Swenson,* 502 F.2d 844, 848 (8th Cir.1974) ("dismissal at plaintiff's request, even if it is with prejudice, is insufficient to invoke the bar of collateral estoppel"), *cert. denied,* 420 U.S. 912, 95 S.Ct. 835, 42 L.Ed.2d 843 (1975); *see also* 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4443, at 385 (1981) ("consent judgments ordinarily support claim preclusion but not issue preclusion"). The rationale behind this general rule is that issues underlying a consent judgment generally are neither actually litigated nor essential to the judgment. *See Lawlor,* 349 U.S. at 327 n. 12, 75 S.Ct. at 868 n. 12; *Wilwording,* 502 F.2d at 848. Nevertheless, " '[when] it can be said that the parties could reasonably have foreseen the conclusive effect of their actions,' " collateral estoppel may apply to issues underlying default or consent judgments. *Klingman,* 831 F.2d at 1296 (quoting 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.444[1], at 794 (2d ed. 1984)) (emphasis from *Kling-*

*man* deleted); *see also* 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4443, at 382 (1981) (issue preclusion attaches to consent judgments where it is clear that the parties intended the issue to be foreclosed). Finally, we have noted that the court in the second action may look beyond the earlier judgment and may

> "examine the pleadings and the evidence in the prior action. And if the rendering court made no express findings on issues raised by the pleadings or the evidence, the court may infer that in the prior action a determination appropriate to the judgment rendered was made as to each issue that was so raised and the determination of which was necessary to support the judgment." 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.443[4], at 3913 (1984) (footnotes omitted).

*Gilldorn,* 804 F.2d at 395.

■ Our examination of the record in this case convinces us that, at least on the summary judgment record before us, the general rule forbidding the application of collateral estoppel to consent judgments, rather than the exception noted in *Klingman,* must control the disposition of this case. We begin with the wording of the consent judgment itself. The text makes it very clear that the debtor—Corona—is no longer to be held legally accountable for any breach of the 1976 agreement, in return for its forbearance with respect to sanctions against La Preferida. However, the text does not at all make it clear that, by abandoning its claim against Corona, La Preferida also was abandoning its claim against Modelo—a claim it had expressed a specific interest in pursuing eight months before and about which it had filed a law suit against Modelo several days before filing the motion to withdraw.[8] There are certainly some aspects of the bankruptcy proceedings—most notably Corona's undertaking to indemnify Modelo for any liability it incurs for the exercise of distribution rights purchased from Corona—that sup-

port the conclusion that, at least from the viewpoint of Corona and the Creditor's Committee, the consent judgment was to terminate *all* of La Preferida's claims. Nevertheless, on this record, we cannot say, with any degree of certainty that *all* parties, including La Preferida, " 'could reasonably have foreseen the conclusive effect of their actions.' " *Klingman,* 831 F.2d at 1296 (quoting 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.444[1], at 794 (2d ed. 1984)) (emphasis from *Klingman* deleted).

Accordingly, we conclude that, because the consent judgment is ambiguous and the intent of the parties cannot be gleaned definitively from the entirety of the proceedings, summary judgment should not have been granted on the basis of collateral estoppel.

## C. *The 1987 Case*

■ For the reasons set forth in the preceding paragraphs with respect to the 1986 case, summary judgment on the basis of collateral estoppel is also inapplicable in this case. However, we do believe that application of the doctrine of res judicata justifies the granting of summary judgment.

When "the prior action was brought in federal court, federal rules of res judicata apply." *Barnett v. Stern,* 909 F.2d 973, 977 (7th Cir.1990); *see Matter of Energy Coop., Inc.,* 814 F.2d 1226, 1230 (7th Cir.), *cert. denied,* 484 U.S. 928, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987). In *Brown v. J.I. Case Co.,* 813 F.2d 848, 854 (7th Cir.), *cert. denied,* 484 U.S. 912, 108 S.Ct. 258, 98 L.Ed.2d 215 (1987), the court set forth the essential elements of res judicata: 1) a final judgment on the merits in an earlier action; 2) an identity of the cause of action in both the earlier and later suit; and 3) an identity of parties or privies in the two suits. *See also Shaver v. F.W. Woolworth Co.,* 840 F.2d 1361, 1364 (7th Cir.), *cert. denied,* 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988). In *Shaver,* we acknowledged that the Supreme Court has

---

8. La Preferida apparently did not serve Modelo until after the bankruptcy court had entered the consent judgment; Modelo denies that it had notice of the suits before service was made.

mandated that these criteria be applied rigorously:

> " '[the] doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time than ours, it is a rule of fundamental and substantial justice, "of public policy and of private peace," which should be cordially regarded and enforced by the courts....' *Hart Steel Co. v. Railroad Supply Co.,* 244 U.S. 294, 299, 37 S.Ct. 506, 507, 61 L.Ed. 1148 (1917). The language used by this court half a century ago is even more compelling in view of today's crowded dockets: 'The predicament in which respondent finds himself is of his own making.... [W]e cannot be expected, for his sole relief, to upset the general and well-established doctrine of res judicata, conceived in light of the maxim that the interest of the state requires that there be an end to litigation—a maxim which comports with common sense as well as public policy. And the mischief which would follow the established precedent for so disregarding this salutary doctrine against prolonging strife would be greater than the benefit which would result from relieving some case of individual hardship.' *Reed v. Allen,* 286 U.S. [191] at 198–199, 52 S.Ct. [532] at 533 [76 L.Ed. 1054 (1932)]."

*Id.* at 1364-65 (quoting *Federated Dep't Stores v. Moitie,* 452 U.S. 394, 401–02, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981)) (emphasis in *Shaver* ).

Here, each of the three criteria set out in the preceding paragraph are met: 1) the sale of Corona's trademarks constitutes a final adjudication by the bankruptcy court of ownership rights; 2) in the present suit, La Preferida attempts to relitigate those same rights; 3) both La Preferida and Modelo were parties to the bankruptcy sale and are parties to the present litigation.

In the initial proceedings before the magistrate and again before the district court, La Preferida argued that it ought not be bound by the judgment sale of the bankruptcy court because, it contended, Corona previously had sold its distribution rights in thirty-seven states to Modelo through "concurrent use agreements" signed in 1983 and 1984. The magistrate initially determined that there was a genuine issue of triable fact as to whether these agreements constituted a sale by Corona of its distribution rights. The district court, in granting summary judgment, determined that no sale had taken place and, consequently, that all Corona's trademarks were part of the bankruptcy estate and conveyed to Modelo by the sale order of the bankruptcy court. The parties renew—vigorously—before us the arguments they made in the district court. However, at this stage of the litigation, whether certain trademarks had been sold previously by Corona to Modelo is not outcome determinative. It is quite clear that, correctly or incorrectly, the bankruptcy court purported to sell *all* of Corona's trademarks "free and clear of all liens, claims and encumbrances" and that La Preferida, a party to the proceeding with full rights of participation, including discovery, acquiesced in that sale on that basis. La Preferida neither appealed the judgment of the district court nor requested, according to Bankruptcy Rule 9024,[9] that the matter be reconsidered. At the time of the bankruptcy court's order, La Preferida acquiesced in the sale—without encumbrance—of *all* the trademarks of Corona evidenced by registrations in the United States Patent and Trademark Office. By contrast, La Preferida's 1987 suit now asks that the district court undo one of the essential terms of the sale order and determine that, even now, La Preferida has an interest in the trademarks. In short, the 1987 suit is nothing other than a collateral attack on the final judgment of the bankruptcy court. However, except for the narrow exceptions set forth in Rule 60(b), bankruptcy sales, if they are to fulfill their role, must be final when made. *See Matter of Met–L–Wood Corp.,* 861 F.2d 1012, 1019 (7th Cir.1988), *cert. denied,* ——

---

**9.** Rule 9024 applies Rule 60(b) of the Federal Rules of Civil Procedure to bankruptcy proceedings. *See Matter of Met–L–Wood Corp.,* 861 F.2d 1012, 1016 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989).

U.S. ——, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989).

We apply here traditional rules of res judicata. As the Supreme Court said in *Moitie:*

> This Court has long recognized that "[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties."

452 U.S. at 401, 101 S.Ct. at 2429 (quoting *Baldwin v. Traveling Men's Ass'n,* 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931)). Accordingly, we affirm, although on a different ground supported by the record, the judgment of the district court that the 1987 case is barred by the doctrine of res judicata.

Even if the bankruptcy court's sale order did not bar further litigation over La Preferida's rights of ownership, the court's subsequent order confirming Corona's plan of liquidation would preclude further litigation here.[10] As creditors of Corona, both Modelo and La Preferida were parties to that order and bound by its terms. That order explicitly declared that all executory contracts between Corona and any other party were no longer of any force and effect.

### Conclusion

The judgment of the district court is affirmed in part, and reversed and remanded in part.

IT IS SO ORDERED.

---

**10.** We also determine, contrary to the district court (*see supra* note 5), that the consent judgment does not preclude the 1987 suit. The district court based the application of res judicata, in necessary part, upon its conclusion that the order denying La Preferida's proof of claim conclusively established that Corona properly terminated the 1976 agreement. However, we have already determined that this order is ambiguous. Thus, for the same reason that the consent judgment does not bar the 1986 suit, *see supra* p. 907, it cannot have a res judicata effect with respect to the 1987 case.