**INNKEEPERS' TELEMANAGEMENT AND EQUIPMENT CORPORATION,** Plaintiff,

v.

**HUMMERT MANAGEMENT GROUP, INC., et al., Defendants.**

No. 92 C 8416.

United States District Court, N.D. Illinois, E.D.

Dec. 20, 1993.

Michael Alan Kraft, Siegan, Barbakoff, Gomberg & Kane, Ltd., Chicago, IL, for plaintiff Innkeepers' Telemanagement and Equipment Corp.

Keith M. Kanter, Siegan & Weisman, Ltd., Chicago, IL, for defendants Hummert Management Group, Inc., Midway Hospitality Corp., Midway of Delta, a gen. partnership, Midway Motor Lodge of Brookfield, gen. partnership, Mitchell Associates, a general partnership, Midway Motor Lodge, Inc., of Green Bay, WI, a WI corp., Midway Motor Lodge, Inc. of Madison, WI, a WI corp., Midway Motor Lodge of Wausau, WI, a gen. partnership, Midway Motor Lodge of Appleton, WI, a gen. partnership, Midway Motor Lodge of Eau Claire, WI, Midway Motor Lodge of Grand Rapids, a gen. partnership and Midway Motor Lodge of LaCrosse, WI, a gen. partnership.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Innkeeper's Telemanagement and Equipment Corporation brings this five count complaint, asserting conversion, breach of contract, and the creation of a constructive trust, and seeking a declaratory judgment and an accounting. Presently before us is defendants' motion for partial summary judgment. For the reasons set forth below, defendants' motion is granted in part and denied in part.

### I. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting

Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th. Cir.1991).

## II. Background

### A. Parties and Proceedings in the Current Lawsuit

Plaintiff Innkeeper's Telemanagement and Equipment Corporation ("ITEC") is a Delaware corporation which provides telecommunications services to the hotel industry. Its principal place of business is located in Northbrook, Illinois. Defendants Hummert Management Group, Inc. and Midway Hospitality Corporation are Wisconsin corporations which provide management services for various hotels, including those involved in this action. The remaining defendants are partnerships and corporations which own hotels in Wisconsin or Michigan operating under the "Midway" or "Best Western" name.[1] Between November, 1987 and February, 1988, ITEC[2] entered into contracts with each of the defendant hotels, in which ITEC agreed to provide telecommunications services for the hotels.[3] Specifically, the agreements, which were essentially identical, stated that ITEC would lease telephone equipment to the hotel, provide local and long distance telephone service, and maintain and update the equipment. In return, the hotels each agreed to pay ITEC a fee based in part upon the revenues received by the hotel for guest use of the telephone services.

In March, 1990, the parties amended their contracts. These so-called "0+" Amendments provided that ITEC would install credit card processing equipment in the hotels. ITEC also agreed to pay the hotels a commission in the form of a monthly credit based upon the additional revenues ITEC received from credit card calls. In the "0+ Amendments," ITEC reserved the right to "renegotiate or even eliminate these credits in the events these charges are reduced, changed, or deemed not in compliance with federal or state regulation(s)."

The parties disagreed from the start about virtually every element of their contracts, including the calculation of revenues the hotels owed ITEC, the life of the agreements, ITEC's maintenance and upgrade obligations, and the rebates owed under the "0+" Amendments. Following fruitless negotiations, counsel for the hotels sent ITEC a letter asserting that ITEC was in default of its obligations under the agreements. Continued discussions aimed at resolving the parties' differences were unavailing. As a result, in May, 1992, hotels began to withhold the estimated amount of the "0+" rebates from the revenues otherwise payable to ITEC. In response, in the fall of 1992, ITEC stopped paying local long distance carriers for service to the hotels.[4] In addition, on November 18, 1992, ITEC sent the management companies' attorney, who had been representing the interests of the hotels, a notice of termination of all its Midway contracts.

On December 2, 1992, ITEC filed a lawsuit against the two management companies in

---

1. The hotels are: (i) Best Western Midway or Midway Motor Lodge–Lansing; (ii) Best Western Midway or Midway Motor Lodge–Brookfield; (iii) Midway Motor Lodge–Airport; (iv) Midway Motor Lodge–Green Bay; (v) Best Western Midway Motor Lodge–Milwaukee Hwy 100 or Midway Motor Lodge–Milwaukee Hwy 100; (vi) Midway Motor Lodge–Wausau; (vii) Midway Motor Lodge–Appleton; (viii) Midway Motor Lodge–Eau Claire; (ix) Best Western Midway Motor Lodge or Midway Motor Lodge–Grand Rapids; (x) Midway Motor Lodge–LaCrosse.

2. The agreements at issue were actually entered into by ITEC's predecessor in interest. For the sake of clarity and simplicity, however, we shall simply refer to both ITEC and its predecessor in interest as "ITEC".

3. However, ITEC acknowledges that it never entered into a contract with the two management companies.

4. Around this time, two of the hotels, Midway Motor Lodge–Grand Rapids and Midway Motor Lodge–Lansing, temporarily lost telephone service.

the Chancery Division of the Circuit Court of Cook County. That lawsuit was subsequently removed to this court, and ITEC amended its complaint to name the various hotels. Pursuant to a report and recommendation by Magistrate Judge Pallmeyer, the hotels replaced their individual telecommunications systems, and permitted ITEC to remove its equipment. In September, 1993, ITEC informed defendants, and later confirmed in its submissions to this court, that it would not be proceeding on Counts I through IV of its complaint. Accordingly, the only live count remaining is Count V (breach of contract).

## B. Midway Motor Lodge–Elk Grove

Like the defendant hotels in the present lawsuit, Midway Motor Lodge–Elk Grove ("Elk Grove") had a contract with ITEC, whereby ITEC provided Elk–Grove with telephone service. Unlike the other hotels, however, Elk Grove filed for Chapter 11 bankruptcy protection in April, 1992, and is therefore not a party to this action. Because the developments in the bankruptcy proceedings directly impact our consideration of the current summary judgment motion, we will relate them in some detail.

ITEC filed its Notice of Claim in the United States Bankruptcy Court for the Eastern District of Wisconsin, where the Elk Grove bankruptcy was pending, on March 1, 1993. Two weeks later, the debtor-in-possession filed and served its objections to ITEC's claim. On March 31, 1993, the court held a pretrial conference, in which it scheduled a hearing for April 29, 1993. The day before the hearing, Elk Grove requested that the bankruptcy court abstain from estimating ITEC's claim and allow this Court to resolve ITEC's claims against the other Midway hotels. ITEC objected, asserting that it lacked information about Elk Grove's partners' ability to satisfy ITEC's claims, and thus could not rely upon them to do so. The bankrupt-

cy court denied the motion and proceeded with the scheduled hearing.

The court proceedings consisted of both a § 502(c) estimation hearing and a trial on Elk Grove's objections to ITEC's claim.[5] The proceedings began on April 29, 1993, and concluded on April 30, 1993. In its findings of fact and conclusions of law issued from the bench, the court concluded that ITEC had breached its contract. Specifically, it found that ITEC failed to update the telephone systems and provide state of the art equipment, misled Elk Grove on the "0+" commissions, breached with respect to its billing procedures, and was guilty of bad faith with respect to a number of issues. In addition, the court found that ITEC failed to cure any of its defaults, which the court considered to be a material breach. Finally the bankruptcy court concluded that there was no significant default by Elk Grove. Accordingly, the court both estimated and allowed ITEC's claim as follows: a general unsecured prepetition nonpriority claim in the amount of $2,956.81 and a postpetition administrative claim in the amount of $2,272.97.[6] The bankruptcy court's ruling was appealed to the United States District Court for the Eastern District of Wisconsin, and that appeal is currently pending.

## III. Discussion

### A. Counts I–IV

ITEC informed this court that it no longer intends to proceed on Counts I–IV. Defendants' summary judgment motion with respect to those counts is therefore moot, and accordingly, is denied.

### B. Count V (Breach of Contract)

■ Defendants first assert that ITEC has failed to state a claim against the management companies, and that they should

---

5. The parties strenuously disagree as to whether ITEC was aware that this hearing was to be both an estimation hearing, pursuant to 11 U.S.C. § 502(c), *and* a trial on the debtor's objections to ITEC's claim, as opposed to simply an estimation hearing, and each points to statements of the bankruptcy court which allegedly support its position. We will more fully consider this issue in the text of our discussion.

6. ITEC originally filed a claim in the amount of $424,420.55. It subsequently amended its claim, asserting that $237,554 was due. Although it filed objections to ITEC's claim, Elk Grove had admitted that at least $2,272.97 of the claim was legitimate.

therefore be dismissed. It is undisputed that the managements companies, Hummert Management Group, Inc., and Midway Hospitality Corporation, had no contracts with ITEC; rather, all of the contracts at issue were entered into between ITEC and the individual hotels. Accordingly, any breach of contract claim, at least to the extent it is directed against Hummert and Midway, must rest upon some other ground than the existence of a contract between ITEC and the management companies.

ITEC asserts that each management company and the hotels that it represents are actually a "single enterprise" under *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 80 S.Ct. 441, 4 L.Ed.2d 400 (1960). In support, they argue that the principal officers of the management companies are also part owners of the defendant hotels, and that Midway itself is a part owner of one of the hotels. They further assert that "Hummert and Midway have represented themselves to ITEC as the entities responsible for operations of the hotels which are the subjects of the agreements, and have initiated virtually all of the correspondence to ITEC relating to the agreements...." Finally, they note that William Krause, one of Midway's officers, was the individual who instructed the hotels to disconnect ITEC's maintenance modems, such that ITEC was unable to access its equipment from off-site.

We first observe that the "single enterprise" doctrine cited by ITEC is a test employed by the National Labor Relations Board, and its application has therefore been limited to the labor relations arena. *See Esmark, Inc. v. NLRB*, 887 F.2d 739, 753 (7th Cir.1989). ITEC provides no other authority, and thus no relevant authority, for holding the management companies liable for the alleged contract breaches of the defendant hotels. This failure alone is sufficient reason for rejecting ITEC's arguments.

■ Furthermore, ITEC's failure in this regard is likely due to the absence of any authority, under any theory, for retaining the management companies as parties in this action. Under Illinois law, "[i]t is a well-established principle that a corporation is separate and distinct as a legal entity from its shareholders, directors and officers, and, generally, from other corporations with which it may be affiliated." *Main Bank of Chicago v. Baker*, 86 Ill.2d 188, 56 Ill.Dec. 14, 21, 427 N.E.2d 94, 101 (1981). As a result, "before the separate corporate identity of one corporation will be disregarded and treated as the alter ego of another, it must be shown that it is so controlled and its affairs so conducted that it is a mere instrumentality of another, *and it must further appear* that observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice." *Main Bank of Chicago*, 56 Ill.Dec. at 21, 427 N.E.2d at 101 (emphasis added). ITEC has not even approached such a showing here, and it would therefore be wholly inappropriate to pierce the management companies' corporate veils.

■ Rather, the facts asserted by ITEC simply demonstrate that the management companies were essentially acting as agents for the hotels, which was, of course, their intended role. It is well established that, where the principal (the hotels) is disclosed, as is the case here, the agent is not liable for the principal's alleged breach of contract. *See* Restatement (Second) of Agency § 320 (1957). Accordingly, there is no basis for including the management companies as a party in this suit. We therefore grant the defendants' motion to dismiss Hummert Management Group, Inc. and Midway Hospitality Corporation.

■ Defendants also argue that, based upon the outcome of the Elk Grove bankruptcy trial, ITEC is collaterally estopped from denying that it breached the contracts with the hotels or from denying that its breach excused the hotels from further performance. They therefore seek summary judgment on those issues.[7]

■ Four elements must be met before collateral estoppel will apply:

---

7. Although state substantive law will determine the parties' rights and liabilities in this diversity action, we will apply federal principles of preclusion. *See La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 905 n. 6 (7th Cir. 1990) (citations omitted).

1) the issue sought to be precluded must be the same as that involved in the prior action, 2) the issue must have been actually litigated, 3) the determination of the issue must have been essential to the final judgment, and 4) the party against whom estoppel is invoked must be fully represented in the prior action.

*Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987) (citations omitted).[8] Defendants assert that the proceedings in the bankruptcy court meet the above test, and argue that ITEC is therefore estopped from challenging the bankruptcy court's rulings in this action. It is clear that bankruptcy court rulings which fall within the above parameters have preclusive effect. *See, e.g., Klingman,* 831 F.2d at 1296. Furthermore, the fact that such a ruling is on appeal does not alter this result. *See Cohen v. Bucci,* 103 B.R. 927 (N.D.Ill.1989), *aff'd,* 905 F.2d 1111 (7th Cir.1990). Finally, collateral estoppel is appropriate even where the party asserting estoppel was not a party in the previous action, as long as party to be estopped was a party in that action. *See Blonder–Tongue Lab., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 349–50, 91 S.Ct. 1434, 1453, 28 L.Ed.2d 788 (1971).

■ ITEC does not challenge the above statements of law, but instead asserts that the bankruptcy trial at issue here does not meet the test for collateral estoppel. Specifically, ITEC suggests that the bankruptcy court's rulings should not have preclusive effect because they were part of an estimation hearing, and "the estimation of claims in bankruptcy does not establish a binding legal determination of the ultimate validity of a claim nor a binding determination of any issues." *In re Bicoastal Corp.,* 122 B.R. 771, 775 (Bankr.M.D.Fla.1990). While we do not

take issue with ITEC's assertion regarding the preclusive effect of estimation hearings, it is clear that the proceedings in the bankruptcy court were much more than that. In fact, the bankruptcy judge consolidated the estimation hearing *and* the actual trial on the merits of Elk Grove's objections to and the allowability of ITEC's claim. As a result, it is readily apparent that the trial on the objections constituted "actual litigation" of the issues raised therein.

■ ITEC also asserts, however, that even the trial on the objections was insufficient to satisfy the requirements for collateral estoppel. Among other things, ITEC asserts that it was unable to complete all of the discovery it wished to take, given the accelerated time frame, and that the bankruptcy judge strictly limited the amount of time allowed for the trial, and thus the number of witnesses that ITEC could call. ITEC therefore argues that it did not have a full and fair opportunity to litigate the merits of its claim. We first observe that, "[i]n determining whether an issue has been litigated in an earlier case, a full trial on the merits in the earlier action is not an absolute prerequisite." *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.,* 914 F.2d 900 (7th Cir. 1990). As the Seventh Circuit has stated:

> The requirement of collateral estoppel that the issue be "actually litigated" does not require that the issue be thoroughly litigated.... This requirement is generally satisfied if the parties to the original action disputed the issue and the trier of fact resolved it.

*Continental Can Co. v. Marshall,* 603 F.2d 590, 596 (7th Cir.1979) (citations omitted).[9] Here there is no question but that the trial in

---

8. ITEC does not challenge the existence of elements one, three, and four. Accordingly, we shall limit our discussion to whether the issues were "actually litigated."

9. *Continental Can Co.* involved a party who, for tactical reasons, failed to present as much evidence as he might have with respect to the relevant issue. The court concluded that the failure to introduce evidence, whether by design or by inadvertence, could not be allowed to act as a bar to the application of collateral estoppel. *Continental Can Co.,* 603 F.2d at 596. Although

ITEC asserts that it wanted more time to prepare, and would have submitted additional evidence if the length of trial were not restricted, we note that ITEC failed to object to the format selected by the judge before, during, or even immediately after the trial, when the judge reiterated that the proceedings constituted both an estimation hearing and a trial on the merits of the debtor's objections to ITEC's claim. Accordingly, the present case clearly falls within the general principles set forth in *Continental Can Co.*

the bankruptcy court included live witnesses, direct and cross examination, and evidentiary objections regarding the disputed issues. It is also undisputed that the judge resolved those issues, stating his findings of fact and conclusions of law from the bench. It therefore appears that, at least for the purposes of collateral estoppel, the relevant issues were "actually litigated."

We further observe that the objections that ITEC raises to the propriety of the trial in the bankruptcy court, including the combining of the estimation hearing and the actual trial on the objections, ITEC's alleged lack of notice that the trial would be combined with the estimation hearing, and the time limitations placed on the parties, have all been raised by ITEC in its appeal of the bankruptcy court's ruling. It is clear that the Eastern District of Wisconsin is a far better forum for raising those objections than this court, and we will therefore refrain from attempting to resolve them here. Nonetheless, we are mindful that collateral estoppel is an equitable doctrine, and is thus "subject to limitations where fairness and justice require." *Stevenson v. City of Chicago*, 638 F.Supp. 136, 149 (N.D.Ill.1986). Accordingly, if ITEC wishes to file a Motion to Reconsider this ruling, we will withhold our ruling on such motion, pending the outcome of the Elk Grove bankruptcy appeal.[10] For the present, however, we conclude that ITEC is collaterally estopped from denying that it breached its contracts with the hotels, and from denying that its breach excused the hotels from further performance. Accordingly, defendants are entitled to summary judgment on these issues.

### IV. Conclusion

For the reasons set forth above, we deny defendants' motion for summary judgment on Counts I–IV, and grant defendants' motion for partial summary judgment on Count V. We further dismiss Hummert Management Group, Inc. and Midway Hospitality

10. We, of course, intimate no view as to the effect that a ruling in ITEC's favor in the bank-

Corporation from this action. It is so ordered.

ruptcy appeal might have in the present case.