21 F.3d 430
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Selim M. SENKAN, Plaintiff-Appellant,
v.
ILLINOIS INSTITUTE OF TECHNOLOGY, Defendant-Appellee.
 No. 93-2044.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 2, 1993.
Decided April 12, 1994.
 
 Before LAY*, CUDAHY and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Professors at Illinois Institute of Technology conduct research, and in the process they invent things. To encourage and facilitate research and invention, in 1982 IIT established a formal Patent Policy.
 
 
 2
 This 1982 Patent Policy referred to an entity called "Research Corporation" which at that time IIT used to evaluate inventions, obtain patents for them, market them and remit the proceeds. The 1982 Patent Policy entitled an inventor to 50% of IIT's "entire proceeds on the invention" if it were administered by Research Corporation, or "one half of all IIT net income" if "the patent" was "administered by other than Research Corporation."
 
 
 3
 By 1987 IIT was phasing out its use of Research Corporation. In 1989 it promulgated a new Patent Policy, which removed any reference to Research Corporation. The 1989 Patent Policy also changed the language regarding the distribution of income. The 1989 Patent Policy provided that the "inventor shall receive 50% of IIT's net income from the invention." Net income was defined as "the income remaining after deductions for payments or obligations directly attributable to patenting, marketing, licensing, protection or administering the invention."
 
 
 4
 In 1987, while employed by IIT, Senkan invented a process which obtained high molecular weight hydrocarbons, like acetylene and ethylene, from natural gas. IIT entered an agreement with Dow Chemical Company in which it agreed to grant Dow a license for the patent on the invention. Dow in exchange agreed (1) to pay $500,000 to IIT to fund a research project to develop Senkan's invention, and (2) to pay $500,000 for the license.
 
 
 5
 Dow paid the $500,000 licensing fee in two payments in 1989. IIT distributed half of these payments, less expenses, to Senkan.
 
 
 6
 In 1988 Senkan participated in negotiations between Dow and IIT relating to the research project. Senkan approved and helped to develop the budget for the research project. The budget included Senkan's salary.
 
 
 7
 Senkan did not claim at the time of the negotiations that he was entitled to half of the payments made by Dow for the research project. Nor did he make that claim when the payments for the project were received by IIT. Nor did he make that claim during the more than a year that he worked on the project.
 
 
 8
 Senkan was terminated by IIT in August of 1990. About one year later he filed a complaint against IIT, in which he claimed that he was owed half of the amount paid to IIT by Dow for the research project. The parties both filed motions for summary judgment.
 
 
 9
 The district court granted summary judgment against Senkan and this appeal followed.
 
 
 10
 At issue is whether the district court erred when in granted summary judgment for IIT based upon its in finding (1) that the contract was ambiguous, but that (2) undisputed extrinsic evidence rendered the meaning of the contract clear.
 
 
 11
 We review the district court's grant of summary judgment de novo. La Preferida, Inc. v. Cerveceria Modelo, S.A., 914 F.2d 900 (7th Cir.1990).
 
 
 12
 This court has determined that, under Illinois law, whether or not a contract is ambiguous is a question of law. Toys "R" Us, Inc. v. NBD Trust Co., 904 F.2d 1172, 1176 (7th Cir.1990); see also Sunstream Jet Express, Inc. v. International Air Serv. Co., Ltd., 734 F.2d 1258, 1266 (and cases cited therein). We have also determined that if extrinsic evidence which will resolve the ambiguity is undisputed, then the determination of the meaning of the contract remains a matter of law. Coplay Cement Co., Inc. v. Willis & Paul Group 983 F.2d 1435, 1439 (7th Cir.1993) (citing to Lumpkin v. Envirodyne Indus's, Inc., 933 F.2d 449, 456 (7th Cir.1991)).
 
 
 13
 The district court applied Lumpkin, which sets forth the steps to be followed when construing the terms of a contract under Illinois law. It first analyzed the contract between Senkan and IIT, as embodied in the 1982 and 1989 Patent Policies, to determine whether it was ambiguous.
 
 
 14
 The district court found that the Patent Policies' use of the terms "net income" and "proceeds" was ambiguous. The terms are not synonyms, they have distinct meanings, yet they are used interchangeably in the 1982 Patent Policy. It also found that the precise role of Research Corporation is never defined in the 1982 Patent Policy. Finally, the district court found that the 1989 Patent Policy did not clearly define "net income, 0" to half of which the inventor was entitled.
 
 
 15
 Having found the Patent Policies to be ambiguous, the district court looked to extrinsic evidence to make sense of them. It concluded that when undisputed evidence is examined, the meaning of the Patent Policies becomes clear. In particular, the district court looked to undisputed affidavits of IIT professors and administrators which state that funding for research projects has never been treated as proceeds or income from an invention, and that such funds are never shared with the inventor. The district court also looked to the language of the research agreement between IIT and Dow. The research agreement provided that Dow would finance research according to a budget developed by Senkan himself, which included Senkan's salary, and which did not call for half of the amount to be paid to Senkan.
 
 
 16
 The district court concluded that the undisputed extrinsic evidence clarified the ambiguity which existed in the text of the Patent Policies. Therefore, following Lumpkin, it granted summary judgment.
 
 
 17
 Upon reviewing this record de novo we find no error on the part of the district court. The Patent Policies, read in isolation are ambiguous. However, the undisputed evidence in the record fully clarifies these ambiguities. Therefore, following Lumpkin the district court was entitled to interpret the contract as a matter of law.
 
 
 18
 The district court's interpretation was correct. Senkan is not entitled to half of the research project budget, as he claims.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The Honorable Donald P. Lay, United States Circuit Judge for the Eighth Circuit, is sitting by designation